**Lansing, Michigan**

# Opinion

Chief Justice:        Justices:
Marilyn Kelly        Michael F. Cavanagh
                     Elizabeth A. Weaver
                     Maura D. Corrigan
                     Robert P. Young, Jr.
                     Stephen J. Markman
                     Diane M. Hathaway

FILED AUGUST 26, 2010

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                 No. 140021

GEORGE MICHAEL SZALMA,

      Defendant-Appellant.

BEFORE THE ENTIRE BENCH

YOUNG, J.

In this case, the trial judge's determination that the prosecutor failed to present sufficient evidence to convict defendant was based on an erroneous legal analysis. The question this case poses is whether that erroneous legal analysis precludes defendant's retrial under the double jeopardy clauses of the United States and Michigan constitutions.[1] This Court's decision in *People v Nix* holds that such legal error precludes

---

[1] US Const, Am V; Const 1963, art 1, § 15.

retrial.[2] Our adversarial system of justice precludes the prosecution from harboring error at the trial level and subsequently seeking relief on the basis of that error. Accordingly, this Court is left with no other option. Had the prosecution not conceded the trial court's legal error, this case would have provided an opportunity to revisit the correctness of *Nix*. Because the prosecution supported the legal error and because *Nix* squarely compels a reversal, we reverse the Court of Appeals judgment and reinstate the trial court's directed verdict of acquittal.

## I. FACTS AND PROCEDURAL HISTORY

Defendant George Szalma was charged with first-degree criminal sexual conduct (CSC-I) based on the allegation that he digitally penetrated the anus of his four-year-old son during his parental visitation time on June 30, 2007.[3] At trial, the complainant testified that, when both he and defendant were in the bathroom naked, defendant "put his hand inside my butt," and it felt "not good." He also testified that he did not see defendant's hand because defendant was standing behind him at the time.

The complainant's mother also testified. She explained that the sometimes acrimonious custody situation required her and defendant to meet at the Harper Woods Police Station to exchange the complainant and his brother before and after defendant's parental visitation time. She also testified that the complainant exhibited odd behavior on

---

[2] *People v Nix*, 453 Mich 619, 628; 556 NW2d 866 (1996).

[3] Defendant is the ex-boyfriend of the complainant's mother. Before the CSC allegation, defendant had visitation rights with the complainant and complainant's brother every other weekend.

2

the evening of the alleged sexual assault. After defendant's visitation time, the complainant exhibited "unusually aggressive" behavior at the park. That night, the complainant woke up crying and upset, which his mother considered "really unusual" for him. Finally, she testified that, when she examined the complainant's rectal area three days later, it appeared "weird," "red," and "gaped open."

The prosecution also presented the testimony of the two physicians who examined the complainant. Neither physician's examination of the complainant, however, conclusively established whether penetration had occurred. The two investigating police officers similarly testified that no physical evidence existed either to support or to refute the charges.

Once the prosecution rested its case, defense counsel moved for a directed verdict under MCR 6.419(A),[4] explaining that "the record is void of any evidence which would allow this jury to make a decision that my client is guilty of this charge beyond a reasonable doubt." Counsel elaborated:

> I think a statement on the record, most favorable to the prosecution would suggest the following: That [the complainant] testified that his father put his hand in his butt, that he never saw specifically what occurred, and that it hurt.
>
> * * *
>
> So, with all the numerous other things that could have been causing this irritation, it was a four-year-old child's suggesting his father put his

---

[4] MCR 6.419(A) provides, in relevant part: "After the prosecutor has rested the prosecution's case-in-chief and before the defendant presents proofs, the court on its own initiative may, or on the defendant's motion must, direct a verdict of acquittal on any charged offense as to which the evidence is insufficient to support conviction."

hand in his butt.  Was it for wiping a four-year-old little boy who . . . are not always as cleanly [sic] as they should be, because they are four years old, they are little boys, and they would rather be out playing soccer instead of, you know, cleaning themselves.

We don't have anything beyond that.  There have been numerous other things that it could have been.  This case is replete with doubt.  And I can't see how any jury can logically and legally convict Mr. Szalma of such a horrendous offense. . . .

Before making its ruling, the trial court clarified the elements of the charged offense with the prosecution and defense counsel, with both parties *agreeing* that CSC-I contains an element not actually included in the corresponding statute:

> *The Court.*  A couple of questions: I don't have your finished instructions in front of me.  The mens rea for this charge would be what? Anybody[?]
>
> *Prosecutor.*  The specific intent instruction has been stricken, so it does indicate in the jury instruction that we have to prove the Defendant engaged in a sexual act.
>
> *Defense Counsel.*  Judge, I can add to that.  It is not just any touching, or even any penetration that makes the crime out.  It has to be for sexual purposes.
>
> *The Court.*  It is not strict liability?
>
> *Prosecutor.*  No.
>
> *Defense Counsel.*  No.
>
> *The Court.*  It has to be for a sexual purpose.
>
> *Defense Counsel.*  Yes, sir.

*Prosecutor.* Even given that, I believe that the testimony and the evidence brought forth indicates that it easily could be believed to be for a sexual purpose.[5]

The trial court then proceeded to make its ruling on the basis of this erroneous understanding about the elements of the charged crime:

*The Court.* Well, here are my thoughts: A wonderful, young boy who testified, a very precious, dear child. He made a wonderful impression, anyone would be lucky to have him as your child.

The mother made a very good impression, very likable, very engaging, very polite when cross examined. . . .

---

[5] MCL 750.520b(1) provides, in relevant part:

A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:

(a) That other person is under 13 years of age.

MCL 750.520a(r) defines "sexual penetration," in part, as "any . . . intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body . . . ."

In contrast, the Legislature criminalized certain types of "sexual contact" with another person, MCL 750.520c(1), as second-degree criminal sexual conduct. In doing so, it made sexual gratification an explicit element of the offense. Second-degree "sexual contact" is defined as:

[T]he intentional touching of the victim's . . . intimate parts . . . if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for:

(*i*) Revenge.

(*ii*) To inflict humiliation.

(*iii*) Out of anger. [MCL 750.520a(q).]

5

* * *

Now, you have a four-year-old boy, he's almost five at the time. . . . A very dear boy. And he testifies, he's in the bathroom with his dad, and something he says—it's hard to even say what he says. The construction of what he says, is, the inference is that it was his dad's finger went into his anus, and it didn't feel that great. . . .

He essentially repeats that, this is what happened to me, he tells it to a couple of doctors. Now, it is true, a complainant's story need not be corroborated if, in and of itself, it is good enough to convince you beyond a reasonable doubt. . . .

Now, here, my best reading of the medical testimony, particularly the last doctor, it doesn't really educate you in any way. It is consistent with it happening, and with it not happening. It is not particularly edifying to a finder of fact. It's really not anything you can hang your hat on. [The investigators] really can't do anything to help or hurt the case. . . .

* * *

It is a very unfortunate thing that happened. Unfortunate for everybody involved. Now, what it boils down to then, I guess, is you have to make the argument, the natural father, . . . on this record, decided for sexual purposes to penetrate his child. . . .

[I]t is easier to say, hey, give it to the jury. But, not everything has to go to the jury in a criminal case. [The prosecutor] did a fantastic job with this case, but she's only got so much to work with. It would have to be logical on the record, that there would be something on the record to indicate that the Defendant, I guess, did this, in a criminal trial with that mind set, that it was for sexual purposes, that there is just not another just as logical explanation. I'm not seeing that on this record. . . .

[B]ased on this record, even in the light most favorable to the nonmoving party, I don't find that a reasonable jury could find beyond a reasonable doubt that the crime was committed as charged.

With that, I'm going to grant [defendant's] motion for a directed verdict. That will be that on the case. . . . [T]here is not enough on this record. . . .

6

The prosecution appealed, and the Court of Appeals reversed the directed verdict of acquittal and remanded for a new trial. The panel accepted the prosecution's argument that the verdict of acquittal was an improper determination of the witnesses' credibility, not the legal sufficiency of the evidence. The Court of Appeals determined that "the trial court engaged in a somewhat lengthy analysis of its empirical, objective, sense of what the evidence showed," but that the trial court's analysis "unequivocally focused on the credibility of the witnesses."[6] The panel concluded that "[t]he jury in this case might reasonably have come to a conclusion different from that of the trial court, had it been allowed to proceed to a verdict."[7]

On receiving the defendant's application for leave to appeal, this Court directed oral argument on whether to grant leave to appeal or take other peremptory action.[8]

## II. STANDARD OF REVIEW

Defendant claims that the Court of Appeals decision subjects him to a new trial in violation of the double jeopardy provisions of the United States and Michigan Constitutions.[9] Such a claim is reviewed de novo.[10]

---

[6] *People v Szalma*, unpublished opinion per curiam of the Court of Appeals, issued August 11, 2009 (Docket No. 285632), p 2.

[7] *Id.* at 3.

[8] 485 Mich 1117 (2010).

[9] US Const, Am V; Const 1963, art 1, § 15.

[10] *People v Herron*, 464 Mich 593, 599; 628 NW2d 528 (2001).

III.  ANALYSIS

A.  DOUBLE JEOPARDY JURISPRUDENCE

The Fifth Amendment of the United States Constitution protects a criminal defendant from "be[ing] subject for the same offence to be twice put in jeopardy of life or limb . . . ."[11]  A parallel provision of the Michigan Constitution provides a criminal defendant with similar protection.[12]  In adopting this parallel provision, "the people of this state intended that our double jeopardy provision would be construed consistently with Michigan precedent and the Fifth Amendment."[13]

The double jeopardy prohibition originated in the English common law. Blackstone called it "a universal maxim of the common law of England" that "no man is to be brought into jeopardy of his life, more than once, for the same offence. . . ."[14]  He elaborated:

> And hence it is allowed as a consequence, that when a man is once
> fairly found not guilty upon any indictment, or other prosecution, before

---

[11] US Const, Am V.  The United States Supreme Court incorporated the Fifth Amendment's Double Jeopardy Clause to the states in *Benton v Maryland*, 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969).

[12] Const 1963, art 1, § 15 ("No person shall be subject for the same offense to be twice put in jeopardy.").

[13] *People v Nutt*, 469 Mich 565, 591; 677 NW2d 1 (2004).  Even before the people enacted the 1963 constitution, this Court determined that the Double Jeopardy Clause in previous Michigan constitutions existed coterminously with Fifth Amendment's Double Jeopardy Clause.  See *In re Ascher*, 130 Mich 540, 545; 90 NW 418 (1902) ("[T]he law of jeopardy is doubtless the same under both" the Michigan and United States constitutions.).

[14] 4 Blackstone, Commentaries on the Laws of England (19th ed), p 335.

any court having competent jurisdiction of the offence, he may plead such acquittal in bar of any subsequent accusation for the same crime.[15]

Michigan's own Blackstone, Justice THOMAS M. COOLEY, articulated the following principle in one of his many treatises:

> One thing more is essential to the complete protection of jury trial, and that is, that the accused shall not be twice put in jeopardy upon the same charge. One trial and verdict must, as a general rule, protect him against any subsequent accusation, whether the verdict be for or against him, and whether the courts are satisfied with the verdict or not.[16]

The United States Supreme Court has applied these principles to its double jeopardy jurisprudence for well over a century. In *Ball v United States*, the Court explained that the double jeopardy prohibition "is not against being twice punished, but against being twice put in jeopardy; and the accused, whether convicted or acquitted, is equally put in jeopardy at the first trial."[17]

Following *Ball*, several decisions of the United States Supreme Court have elaborated on the question central to the instant case: what constitutes an "acquittal" within the meaning of the Double Jeopardy Clause? In *United States v Martin Linen Supply Company*, the Court defined an acquittal for double jeopardy purposes as a "ruling

---

[15] *Id.*

[16] Cooley, Constitutional Limitations, pp 325-326 (1st ed).

[17] *Ball v United States*, 163 US 662, 669; 16 S Ct 1192; 41 L Ed 300 (1896).

of the judge, whatever its label, [that] actually represents a resolution, correct or not, of some or all of the *factual elements* of the offense charged."[18]

An acquittal, defined as a resolution of the elements of the charged offense, remains a bar to retrial even if it is "based upon an egregiously erroneous foundation."[19] Thus, in *Sanabria v United States*, the Court determined that an acquittal is final even if it is based on an erroneous *evidentiary* ruling that precluded the prosecution from introducing evidence that would have been sufficient to convict the defendant.[20]

The United States Supreme Court has not directly considered a related, but distinct issue: whether a trial court's acquittal on a criminal charge based on insufficient evidence bars retrial where the trial court erroneously *adds an element* to the charge.[21]

---

[18] *United States v Martin Linen Supply Co*, 430 US 564, 571; 97 S Ct 1349; 51 L Ed 2d 642 (1977) (emphasis added).

[19] *Fong Foo v United States*, 369 US 141, 143; 82 S Ct 671; 7 L Ed 2d 629 (1962).

[20] *Sanabria v United States*, 437 US 54, 68-69; 98 S Ct 2170; 57 L Ed 2d 43 (1978) ("[W]e believe the ruling below is properly to be characterized as an erroneous evidentiary ruling, which led to an acquittal for insufficient evidence. That judgment of acquittal, however erroneous, bars further prosecution on any aspect of the count and hence bars appellate review of the trial court's error."). Similarly, the Court's decision in *Smith v Massachusetts*, 543 US 462; 125 S Ct 1129; 160 L Ed 2d 914 (2005), provided that, once it acquits the defendant of a crime, a trial court may not revisit its previous, erroneous ruling on what evidence may prove an element of that crime.

[21] The concurring justice's position notwithstanding, there is no controlling United States Supreme Court case law on the issue that this Court resolved in *Nix*, namely, whether a trial court's acquittal on a criminal charge due to insufficient evidence bars retrial where the trial court *adds an element* to the charge. Indeed, at least one federal appellate court has reached the *opposite* conclusion as the concurring justice. See *United States v Maker*, 751 F2d 614, 622 (CA 3, 1984), cert den 472 US 1017 (1985) (holding that a judicial ruling is an acquittal "only when, in terminating the proceeding, the trial court actually resolves in favor of the defendant a factual element necessary for a

10

criminal conviction."). Therefore, the concurring justice errs when he concludes that the United States Supreme Court has definitively resolved this issue.

Nevertheless, three cases the concurring justice cites in support of his position are worth examining in greater detail. Such examination also shows them to be readily distinguishable from the instant case because they involve evidentiary questions over *actual* elements in the crime.

*Smith v Massachusetts*, 543 US 462, involved a trial court's error regarding not *whether* a particular element to the crime existed, but rather *what evidence could prove that element*. The defendant in *Smith* was charged with unlawful possession of a firearm, among other charges, which "requires proof that the weapon had a barrel 'less than 16 inches' in length." *Id.* at 464, citing Mass Gen Laws Ann, ch 140, § 121 (West 2002) (definition of "firearm"). The trial court granted an acquittal on defendant's motion because it determined that "there was 'not a scintilla of evidence' that petitioner had possessed a weapon with a barrel length of less than 16 inches." *Id.* at 465. Subsequent to that ruling, but while defendant remained on trial for two other charges, the prosecutor "brought to the court's attention a Massachusetts precedent under which (he contended) the victim's testimony about the kind of gun sufficed to establish that the barrel was shorter than 16 inches." *Id.* The trial court agreed with the prosecutor, reversed its previous ruling, and allowed the firearm charge to go to the jury. Thus, the trial court determined that the prosecutor *did* provide sufficient evidence of the 16-inch element to convict defendant of the firearm charge. However, the United States Supreme Court's ruling concluded that the court's mid-trial ruling "meets the definition of acquittal that our double-jeopardy cases have consistently used: It 'actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.'" *Id.* at 468, quoting *Martin Linen*, 430 US at 571.

Similarly, *Arizona v Rumsey*, 467 US 203; 104 S Ct 2305; 81 L Ed 2d 164 (1984), involved the trial court's error, regarding not *whether* a particular aggravating circumstance existed to allow a jury to impose a death penalty for first-degree murder, but *how the prosecutor must prove the occurrence of that circumstance in a particular case*. The aggravating circumstance at issue involved whether a murder occurred "'as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value.'" *Id.* at 205, quoting Ariz Rev Stat 13-703(F)(5). The trial court erroneously ruled that this aggravating circumstance only involved murders for hire, rather than *any* murder occurring during the course of a robbery, as the Arizona Supreme Court interpreted the statute. Nevertheless, the United States Supreme Court concluded that the trial court's decision operated as a verdict on whether defendant was eligible for the death penalty, and that therefore, defendant could not subsequently be placed in jeopardy of death for the same offense, notwithstanding the trial court's "misconstruction of the statute defining the pecuniary gain aggravating circumstance." *Id.* at 211.

This Court, however, has considered that question in *People v Nix*, and concluded that a finding of insufficient evidence constitutes an acquittal of that offense for double jeopardy purposes, even when "the trial court is factually wrong with respect to whether a particular factor is an element of the charged offense."[22] In *Nix*, the defendant was on trial for first-degree premeditated murder and first-degree felony murder. The trial court ruled that the defendant "could not be convicted of either charge as a matter of law" because she "owed no legal duty to the victim," who died after the defendant's boyfriend locked the victim in her own trunk.[23] The majority of this Court in *Nix* concluded that "[t]he phrase 'correct or not'" in the United States Supreme Court's definition of

---

Finally, *Smalis v Pennsylvania*, 476 US 140; 90 L Ed 2d 116; 106 S Ct 1745 (1986), involved whether a trial court's granting of a "demurrer" within the commonwealth of Pennsylvania's rules of criminal procedure involved an acquittal for double jeopardy purposes. The United States Supreme Court held that it did, notwithstanding an alleged error that the trial court committed in interpreting the "recklessness" element of Pennsylvania's third-degree murder statute. *Id.* at 144 n 7.

In this case, as discussed *infra*, there is simply *no* statutorily defined specific intent element to CSC-I. Accordingly, this case presents a different situation than those the United States Supreme Court resolved in *Smith*, *Rumsey*, and *Smalis*. Nevertheless, whether the United States Supreme Court case law mandates the result in this case is immaterial because, as discussed *infra*, and as the concurring justice correctly concludes, this Court's decision in *Nix* clearly controls the outcome of this case.

[22] *Nix*, 453 Mich at 628.

[23] *Id.* at 622. The victim died six days later of dehydration and methanol poisoning, before which time, the prosecution alleged, the defendant was told of the victim's screams coming from the trunk. *Id.* at 630.

12

"acquittal" in *Martin Linen* "refers to all aspects of the trial court's ultimate legal decision . . . ."[24]

The prosecution argued at oral argument in the instant case that *Nix* was wrongly decided and that a trial court's acquittal based on an erroneously included element of the charged offense does not bar a retrial based on the correct elements of the charged offense.

### B. APPLICATION OF DOUBLE JEOPARDY PRINCIPLES

Under MCR 6.419(A), a defendant may move for a directed verdict following the close of the prosecution's proofs and, on that motion, is entitled to "a verdict of acquittal on any charged offense as to which the evidence is insufficient to support conviction."[25] In deciding whether the evidence is sufficient to support conviction, the trial court must examine the evidence introduced at trial in the light most favorable to the prosecution.[26]

Whether a judgment of a lower court is an acquittal for purposes of double jeopardy "is not to be controlled by the form of the judge's action."[27] Rather, an appellate court "must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of

---

[24] *Id.* at 628, quoting *Martin Linen*, 430 US at 571.

[25] MCR 6.419(A).

[26] *People v Couzens*, 480 Mich 240, 244; 747 NW2d 849 (2008).

[27] *Martin Linen*, 430 US at 571.

the offense charged."[28] Similarly, this Court's double jeopardy jurisprudence establishes that "[t]here is an acquittal and retrial is impermissible when the judge 'evaluated the Government's evidence and determined that it was legally insufficient to sustain a conviction'."[29]

However, notwithstanding *Nix*'s broad statement precluding retrial, this Court determined in *People v Mehall* that not all conclusions drawn in a finding of acquittal preclude a retrial. In *Mehall*, this Court held that a trial court's ruling on a defendant's motion for a directed verdict that "focuse[s] almost exclusively on the complainant's testimony, and on its conclusion that her testimony was not credible," is an impermissible credibility judgment and not a "rul[ing] on the sufficiency of the prosecution's proofs."[30] Accordingly, the *Mehall* Court concluded that the trial court "failed altogether to rule on the sufficiency of the prosecution's proofs,"[31] and, as a result, the prosecution could retry the defendant without offending double jeopardy principles.

This case requires this Court to determine whether the trial court's ruling on defendant's MCR 6.419(A) motion involved an "impermissible credibility judgment" under *Mehall,* as the Court of Appeals ruled, or a "resolution, correct or not, of some or

---

[28] *Id.*

[29] *People v Anderson*, 409 Mich 474, 486; 295 NW2d 482 (1980), quoting *Martin Linen*, 430 US at 572, and citing *People v Hampton*, 407 Mich 354, 385-386; 285 NW2d 284 (1979) (RYAN, J., concurring in part and dissenting in part).

[30] *People v Mehall*, 454 Mich 1, 6-7; 557 NW2d 110 (1997).

[31] *Id.* at 7.

all of the factual elements of the offense charged,"[32] as defendant claims. We agree with defendant and hold that the trial court rendered a resolution on the merits of the charged offense and the trial court's ruling bars a retrial of defendant.

### 1. THE TRIAL COURT'S RULING

As stated, we must look to the substance of the trial court's ruling, not its outward form, to determine whether the ruling constitutes an acquittal for double jeopardy purposes.[33] A close review of the record leads inexorably to one conclusion: the trial court ruled that defendant could not be convicted of the offense as charged because no evidence existed in the record to prove that he penetrated the complainant's anus for the purpose of sexual gratification. Thus, this acquittal on the merits of the charged offense is final under the holding of *Nix*.

Before making its ruling, the trial court clarified the elements of the charged offense. Both defense counsel and the prosecution agreed that, for defendant to be convicted of the charged offense, the finder of fact had to conclude that defendant penetrated the complainant's anus for a "sexual purpose."

Similarly, the parties' arguments on the motion focused on whether sufficient evidence existed to prove that defendant acted with a sexual purpose. Defense counsel explained that "[t]here have been numerous other things that [the alleged penetration]

---

[32] *Martin Linen*, 430 US at 571.

[33] *Id.*

could have been." The prosecution countered that "the testimony and the evidence brought forth indicates that it easily could be believed to be for a sexual purpose."

The most obvious explanation of the trial court's ruling is that it determined that the prosecution did not present sufficient evidence to prove the *agreed upon* elements of the offense. In accordance with its understanding of the elements of the charged offense, the trial court indicated that "[i]t would have to be logical on the record, that there would be something on the record to indicate that the Defendant, I guess, did this, in a criminal trial with that mind set, that it was for sexual purposes, that there is just not another just as logical explanation." The trial court then explained, "I'm not seeing that on this record," and granted defendant's motion for a directed verdict.

The Court of Appeals concluded that the trial court's ruling was based on its judgment of the complainant's credibility, rather than on the sufficiency of the evidence. We disagree. The trial court clearly indicated that it could not find any evidence that defendant committed the charged offense for a sexual purpose. Whether or not the trial court's conclusion is *factually* correct is immaterial.[34]

Unlike the trial court in *Mehall*, the trial court in the instant case did not make an improper credibility determination in its ruling.[35] Rather, it examined *all* the evidence,

---

[34] *Martin Linen*, 430 US at 571 (defining an acquittal as "a resolution, correct or not, of some or all of the factual elements of the offense charged").

[35] To the contrary, the trial court seemed to accept the complainant's testimony as true, explaining that the complainant was "a very precious, dear child" and that the complainant's mother "made a very good impression, very likable, very engaging, [and] very polite when cross examined."

including the complainant's testimony, the complainant's mother's testimony, the examining doctors' testimony, and the investigating officers' testimony, in the light most favorable to the prosecutor. The court also properly articulated that the principle that the complainant's testimony can, by itself, be sufficient to support a conviction of CSC.[36] But the trial court noted that it was "hard to even say what [the complainant] says," and it did not find the complainant's testimony sufficient to prove all the elements of CSC. Thus, the trial court's determination that it was "not seeing" any evidence on the record to prove that the defendant penetrated the complainant with a sexual purpose *factually* resolved one of its articulated, but erroneous, elements of the offense.

## 2. EFFECT OF ERRONEOUS RULING OF LAW

At oral argument, the prosecution claimed that the trial court premised its ruling on an erroneous understanding of the elements required to prove CSC-I, namely, the requirement that the prosecutor prove that defendant committed a penetration with *a sexual purpose*. We agree, but the posture of this case under *People v Nix* makes our agreement unavailing. While it is true that the Legislature did not require any specific "sexual purpose" as an element of CSC-I, this Court's decision in *Nix* provides that a trial

Moreover, the trial court explained that "even in the light most favorable to the nonmoving party, I don't find that a reasonable jury could find beyond a reasonable doubt that the crime was committed as charged."

Such observations compel the conclusion that the trial court considered this evidence in the light most favorable to the prosecution when ruling on defendant's motion for a directed verdict.

[36] MCL 750.520h provides: "The testimony of a victim need not be corroborated in prosecutions under [MCL 750.520b] to 520g."

17

court's erroneously added element of a crime does not negate the finality of its directed verdict. Furthermore, we do not consider whether *Nix* was correctly decided because the prosecution conceded the underlying erroneous statement of the elements before the trial court ruled on the defendant's motion for a directed verdict.

MCL 750.520b(1) establishes the CSC-I offense and provides, in relevant part:

> A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:
>
> (a) That other person is under 13 years of age.

The Legislature defined "sexual penetration," in relevant part, as "any . . . intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body . . . ."[37]

In *People v Langworthy*, this Court ruled that "[n]either the first-degree criminal sexual conduct statute nor the corresponding statutory definition of 'sexual penetration' contains any language whatsoever regarding [specific] intent."[38]  Accordingly, the trial court erred to the extent it believed that the prosecution was required to prove that defendant committed a penetration with a sexual purpose.  Rather, as the *Langworthy* Court concluded, "the Legislature intended to maintain the general rule that 'no intent is

---

[37] MCL 750.520a(r).

[38] *People v Langworthy*, 416 Mich 630, 643; 331 NW2d 171 (1982).  Although the Legislature did not attach a specific intent to CSC-I, it *has* required any prohibited "sexual contact" with another person to be "reasonably . . . construed as being . . . done for a sexual purpose . . . ."  MCL 750.520a(q).  See also MCL 750.520c(1) (defining CSC-II as certain types of "sexual contact").

18

requisite other than that evidenced by the doing of the acts constituting the offense', *i.e.,* general intent."[39]  Consistent with *Langworthy*, therefore, in the instant case we only hold that "sexual purpose" is not an element of CSC-I.  We do not hold that a general criminal intent is not an element of CSC-I.

Nevertheless, the trial court's legal error does not negate the effect of its directed verdict.  This Court held in *People v Nix* that an acquittal retains its finality for double jeopardy purposes even when "the trial court is factually wrong with respect to whether a particular factor is an element of the charged offense."[40]  This very situation confronts this Court in the instant case.  Accordingly, *Nix* bars retrial of defendant, and the Court of Appeals erred by ruling otherwise.

As stated, at oral argument in this case, the prosecutor argued that *Nix* was wrongly decided.  However, because the prosecutor conceded the underlying legal error at trial by agreeing with defense counsel that sexual purpose was an element of the charged crime, the prosecution has, undoubtedly inadvertently, created the very error that it wishes to correct on appeal.  Because a party may not harbor error at trial and then use that error as an appellate parachute,[41] we will not reach the question whether *Nix* was properly decided.

---

[39] *Langworthy*, 416 Mich at 644, quoting 75 CJS, Rape, § 9, p 471.

[40] *Nix*, 453 Mich at 628.

[41] See *People v Carter*, 462 Mich 206, 214; 612 NW2d 144 (2000) ("Counsel may not harbor error as an appellate parachute.").  The prosecutor's concession of the elements of CSC-I provides an "'intentional relinquishment or abandonment'" of the

19

## IV. CONCLUSION

The double jeopardy provisions of the United States and Michigan constitutions preclude retrial of a criminal defendant following an acquittal for insufficient evidence. The trial court's decision in the instant case, though premised on an erroneous understanding of the legal elements of the charged offense, nonetheless constituted just such a decision on the sufficiency of the evidence under *Nix*. We therefore reverse the judgment of the Court of Appeals and reinstate the trial court's directed verdict of acquittal.

WEAVER, CORRIGAN, MARKMAN, and HATHAWAY, JJ., concurred with YOUNG, J.

---

right to claim this error on appeal. *People v Carines*, 460 Mich 750, 762 n 7; 597 NW2d 130 (1999), quoting *United States v Olano*, 507 US 725, 733; 113 S Ct 1770; 123 L Ed 2d 508 (1993) (quotation marks omitted).

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                    No. 140021

GEORGE MICHAEL SZALMA,

      Defendant-Appellant.

_____

CAVANAGH, J. (*concurring*).

I concur in the result only. I agree that retrial is barred by the double jeopardy clauses of the state and federal constitutions because the trial court's directed verdict of acquittal was based on its determination that there was insufficient evidence to support the charge. A court's "ruling that as a matter of law the State's evidence is insufficient to establish [the defendant's] factual guilt" is "'a resolution, correct or not, of some or all of the factual elements of the offense charged,'" and, thus, constitutes an acquittal to which double jeopardy protections attach. *Smalis v Pennsylvania*, 476 US 140, 144, 144 n 6; 106 S Ct 1745; 90 L Ed 2d 116 (1986) (citation omitted). See also *People v Nix*, 453 Mich 619, 625; 556 NW2d 866 (1996). Whether the trial court erred in its interpretation of the elements of the crime is irrelevant; "[t]he status of the trial court's judgment as an acquittal is not affected" by a trial court's legal error in interpreting the governing legal principles because "'[t]he fact that "the acquittal may result from erroneous evidentiary rulings or erroneous interpretations of governing legal principles" . . . affects the accuracy

of that determination but it does not alter its essential character.'" *Smalis*, 476 US at 144 n 7, quoting *United States v Scott*, 437 US 82, 98, 106; 98 S Ct 2187; 57 L Ed 2d 65 (1978), and citing *Sanabria v United States*, 437 US 54; 98 S Ct 2170; 57 L Ed 2d 43 (1978), and *Arizona v Rumsey*, 467 US 203; 104 S Ct 2305; 81 L Ed 2d 164 (1984).[1] See also *Nix*, 453 Mich at 624-632.[2] As the United States Supreme Court recently affirmed, "any contention that the Double Jeopardy Clause must itself . . . leave open a way of

---

[1] Although the United States Supreme Court has held that a trial court's legal error in a judgment notwithstanding a verdict, made after a jury trial, may be appealed because the jury verdict can be reinstated without subjecting the defendant to postacquittal factfinding proceeding, *Smalis*, 476 US at 145, and that retrial is permitted when the acquittal was based on a procedural error unrelated to the defendant's factual guilt or innocence, *Scott*, 437 US at 98-99, the Court has never held that a trial court's preverdict acquittal on the merits may be reversed because of a legal error. Indeed, as noted, it has repeatedly stated the opposite.

[2] I disagree with the majority's implication, in dicta, that *Nix* is not compelled by United States Supreme Court precedent. The majority fails to acknowledge or address that court's repeated statements that jeopardy attaches not only when an acquittal is based on an erroneous evidentiary ruling but also when it is based on "erroneous interpretations of governing legal principles." *Smalis*, *supra*, 476 US at 144 n 7 (citation and quotation marks omitted). An error in an interpretation of statutory requirements or elements necessary for a crime constitutes an erroneous interpretation of a governing legal principle. See, e.g., *Rumsey*, 467 US at 211. Thus, United States Supreme Court precedent does govern this case.

Further, the majority's discussion of whether the errors in certain cases should be characterized as evidentiary errors is irrelevant because, as discussed, the United States Supreme Court has repeatedly stated that jeopardy attaches to an acquittal on the merits regardless of *either* evidentiary errors *or* erroneous interpretations of governing legal principles. I note, however, that I disagree that the error in *Rumsey* was evidentiary because it clearly related to the proper interpretation of the statute's requirements and not the evidence required to satisfy that interpretation. Under the majority's expansive understanding of what constitutes an "evidentiary" error, the alleged error in this case is also evidentiary because it relates to whether the prosecution needed to present evidence of a sexual purpose to satisfy the statute.

correcting legal errors is at odds with the well-established rule that the bar will attach to a preverdict acquittal that is patently wrong in law." *Smith v Massachusetts*, 543 US 462, 473; 125 S Ct 1129; 160 L Ed 2d 914 (2005). Therefore, I agree that the Court of Appeals should be reversed and the trial court's directed verdict of acquittal should be reinstated.

KELLY, C.J., concurred with CAVANAGH, J.