*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DANIEL ANTAUN JENKINS,

Defendant-Appellant.

UNPUBLISHED
February 21, 2019

No. 340386
Oakland Circuit Court
LC No. 2017-262518-FH

Before: GLEICHER, P.J., and K. F. KELLY and LETICA, JJ.

PER CURIAM.

Defendant appeals by right his convictions for two counts of controlled substance delivery less than 50 grams, MCL 333.7401(2)(a)(iv). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to two concurrent terms of 18 months to 25 years' imprisonment. We affirm.

## I. BASIC FACTS

Sergeant Douglas Stewart of the Oakland County Narcotics Enforcement Team (NET) was conducting surveillance on defendant for narcotics trafficking. Sergeant Stewart had knowledge that defendant's driver's license was suspended and, after observing defendant get into the driver's side of a vehicle and drive away, Sergeant Stewart contacted Detective Michael Miller of the Oakland County Sheriff's Office, told him that defendant was driving on a suspended license, and asked him to stop defendant.

Detective Miller stopped defendant's vehicle. Upon approaching the vehicle, defendant identified himself and said that he did not have a valid driver's license. Detective Miller arrested defendant for driving on a suspended license, handcuffed him, and placed him in the backseat of his patrol car. Sergeant Stewart advised that defendant may be concealing narcotics on his body. Detective Miller read defendant his *Miranda*[1] rights and told him that he would be searched at

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

the jail, and if he was concealing narcotics on his body he would be additionally charged with bringing narcotics into the jail. Defendant then said that he wanted to speak with members of the NET, who arrived on scene.

Detective Miller relayed the information to Detective Matthew Gorman of the NET, who spoke to defendant while he remained in the backseat of Detective Miller's patrol car. Defendant told Detective Gorman that he wanted to cooperate and give them information on other narcotics traffickers. Detective Gorman said that he had no reason to cooperate with defendant in that manner since they did not find narcotics on him. Defendant then motioned toward his waistband and said that he was concealing narcotics between his buttocks. Detective Gorman let defendant out of the backseat of the vehicle, uncuffed him, and allowed him to retrieve the narcotics from his body. Defendant retrieved a wadded up paper from his buttocks that contained two substances believed to be narcotics. The substances were tested and found to be cocaine and heroin.

Defendant was convicted and sentenced as outline above. He now appeals by right.

## II. BRADY VIOLATION

Defendant first argues on appeal that the trial court erred in not dismissing the charges on due process grounds given the failure to preserve exculpatory evidence. In particular, defendant argued in a pre-trial motion that police destroyed in-car footage that would have corroborated his testimony. We disagree.

We review de novo defendant's claim that the prosecutor's failure to disclose exculpatory material evidence violated his constitutional right to due process. *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534 (2007).

No person may be deprived of life, liberty, or property without due process of law. US Const, Am V; US Const, Am XIV; Const 1963, art 1, § 17. "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). However, when the evidence was only potentially exculpatory, due process requires a different consideration. See *Arizona v Youngblood*, 488 US 51, 57; 109 S Ct 333; 102 L Ed 2d 281 (1988). The United States Supreme Court was unwilling to interpret the Due Process Clause as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution. See *id*. at 58. The Supreme Court in *Youngblood* held: "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id*.; see also *People v Huttenga*, 196 Mich App 633, 642; 493 Mich 486 (1992) ("when the exculpatory nature of the evidence is speculative, due process is not violated in the absence of bad faith where the state fails to preserve such evidence."). Evidence destroyed because of negligence does not equate to bad faith. *Youngblood*, 488 US at 58.

Detective Gorman stated that the recording systems automatically uploaded to a server. If the recording was logged as a traffic stop, it would be saved for 30 days. If the stop was logged as an arrest, it would be saved for 60 or 90 days. If the footage was not requested within the designated time period, it would be automatically deleted. The footage in this case was

logged as a traffic stop. However, the footage was not requested until months after the stop. When the footage was requested, it had automatically been deleted per departmental procedure.

The video may have supported defendant's claim, but it equally may have supported the prosecution's case. Neither party can say for sure because neither party saw the footage in question. Additionally, because Detective Gorman testified that defendant got out of the police car to retrieve the narcotics from his buttocks, the video may not have shown defendant at all. Thus, defendant could only speculate as to the contents of the video. Therefore, defendant did not demonstrate that the evidence was favorable to him as required by *Brady*. Rather, he only demonstrated that the evidence may have been *potentially* useful. Because the footage was not requested for months after the stop, and the footage was automatically deleted, we conclude that there has been no showing of bad faith in not retaining the evidence. Accordingly, because the exculpatory nature of the evidence was speculative and there was no evidence of bad faith, defendant's right to due process was not violated. Thus, the trial court did not err in denying defendant's motion to dismiss the charges.

### III. 404b

Defendant next argues that the trial court abused its discretion in admitting evidence of past acts in violation of MRE 404(b). We disagree.

The trial court heard a pretrial motion from the prosecution during which it stated its intent to present evidence under MRE 404(b) of defendant's arrest in October 2016 for possession and distribution of narcotics. This arrest occurred four months before defendant's arrest on the current charges. Defendant opposed the motion, claiming that the evidence was irrelevant. However, he also stated his intent to use the evidence in his defense to show that his arrest in the instant case was retaliation by the NET officers for a lenient sentence he received for his October 2016 arrest. The trial court granted the prosecution's motion.

"[A] party may not harbor error at trial and then use that error as an appellate parachute . . . ." *People v Szalma*, 487 Mich 708, 726; 790 NW2d 662 (2010). That is, a party cannot create the very error that it wishes to correct on appeal. *Id*. To do so is a waiver of the party's right to raise the issue on appeal. *Id*. and n 41.

In this case, defendant stated his intent during the pretrial hearing to use the evidence of his October 2016 arrest as his primary defense at trial. Then, at trial, defendant did indeed assert that defense. Defendant cross-examined multiple witnesses about their involvement with the NET, their knowledge of his October 2016 arrest, and their participation in his October 2016 arrest. Defendant presented the defense that his arrest in the instant case was a set up and was in retaliation for a lenient sentence he received following his October 2016 arrest by the same officers. In order to assert that defense, defendant necessarily had to rely on evidence of his October 2016 arrest. Defendant consistently relied on the same evidence that he now claims was improperly admitted. Thus, he waived the right to raise the evidentiary issue on appeal. See *Szalma*, 487 Mich at 726 and n 41. Thus, we decline to address the evidentiary issue under MRE 404(b) that defendant now raises on appeal. See *id*. ("Because a party may not harbor error at trial and then use that error as an appellate parachute, we will not reach the question" raised on appeal.).

### IV. SUPPRESSION OF EVIDENCE

Defendant argues in a Standard 4 brief[2] that the physical evidence against him had to be suppressed because Detective Miller lacked reasonable suspicion to stop him. We disagree.

Defendant moved to suppress the physical evidence at trial, arguing that Detective Miller did not have a reasonable suspicion to stop him because he did not run defendant's name in the Law Enforcement Information Network (LEIN) until after he stopped him, and thus, he did not know that defendant's license was suspended until after he stopped him. The trial court denied defendant's motion, finding that Detective Miller had a reasonable suspicion because he had information from Sergeant Stewart that defendant was driving on a suspended license.

"In considering a trial court's ruling on a motion to suppress, we review its factual findings for clear error and its interpretation of the law de novo." *People v Dunbar*, 499 Mich 60, 66; 879 NW2d 229 (2016).

The right to be free from unreasonable searches and seizures is guaranteed by both the United States Constitution and the Michigan Constitution. US Const, Am IV; Const 1963, art 1, § 11. A police officer may make a valid traffic stop if he possesses a reasonable suspicion that crime is afoot. *People v Lewis*, 251 Mich App 58, 69; 649 NW2d 792 (2002). "Reasonable suspicion entails something more than an inchoate or unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *Id*. An officer making a traffic stop may rely on the collective knowledge of the officers involved in the investigation in determining if reasonable suspicion to stop a vehicle existed. *People v Nguyen*, 305 Mich App 740, 751, 753-754; 854 NW2d 223 (2014). Driving on a suspended license is a criminal offense in Michigan, punishable by up to 93 days in jail for the first offense. MCL 257.904(1), (3)(a).

In this case, Sergeant Stewart had direct knowledge that defendant was committing the crime of driving on a suspended license because he observed the crime happen. He relayed his observations to Detective Miller. Detective Miller properly relied on Sergeant Stewart's observation when stopping defendant's vehicle. Thus, Detective Miller had a reasonable suspicion that crime was afoot when he stopped defendant's vehicle, regardless of when he ran a LEIN check on defendant. Because Detective Miller had a reasonable suspicion to stop defendant's vehicle, the evidence obtained did not have to be suppressed. The trial court did not err in denying defendant's motion.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Anica Letica

---

[2] See Michigan Supreme Court Administrative Order 2004-6, Standard 4.