*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v

SHANARA KORTEZARAE REED,

    Defendant-Appellant.

UNPUBLISHED
April 22, 2025
2:23 PM

No. 369671
Macomb Circuit Court
LC No. 2021-002189-FH

Before: MALDONADO, P.J., and CAMERON and YOUNG, JJ.

PER CURIAM.

Defendant appeals as of right her jury-trial convictions of operating a motor vehicle under the influence causing serious injury, MCL 257.625(5), operating a motor vehicle with a suspended license, MCL 257.904(5), as amended by 2020 PA 383,[1] moving violation causing death or serious impairment of bodily function, MCL 257.601d(2), and lying to a police officer, MCL 750.479c(2)(c). She was sentenced to 50 to 120 months' imprisonment for the operating-under-the-influence and suspended-license convictions, 93 days in jail for the moving-violation conviction, and 365 days in jail for the lying-to-police conviction. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a motor-vehicle accident. Cynthia Pisane was driving eastbound on 23 Mile Road with her husband, Michael Stuart, in the passenger seat, and her daughter in the back seat. A burgundy Chrysler 200 driving westbound on 23 Mile Road suddenly turned left, crashing into Pisane's car. Pisane's car was then rear-ended by a black car behind her. The police officers who responded to the crash testified that defendant identified another individual, Domonique Moss, as the Chrysler 200's driver. According to Sergeant Paul Kasperski, who was the first

---

[1] MCL 257.904 was recently amended on March 19, 2025. 2024 PA 113. The prior version of the statute was in effect at the time of defendant's sentencing.

officer to arrive at the scene, Moss nodded her head in agreement. Another witness also told police Moss was the driver, so the police arrested Moss.

Detective Jason Dawidowicz interviewed defendant at the hospital after the crash. According to Dawidowicz, defendant vacillated between admitting she was the driver and claiming Moss was the driver. However, police later determined Moss was not the driver, as she could be seen as a pedestrian at the time of the accident in surveillance footage from a nearby business. Therefore, the charges against Moss were dropped, and refiled against defendant.

About five days after the crash, Dawidowicz called defendant on the telephone using a number she provided at the hospital. Dawidowicz testified he recognized the woman's voice on the phone as defendant's. During the call, Dawidowicz also asked defendant to provide her date of birth and middle name, as well as its spelling, which she did. Dawidowicz asked defendant if she remembered speaking with him at the hospital, which she did not. He then had the following exchange with defendant:

> *Mr. Dawidowicz*: Okay, my question to you Shanara is, I did the research, I got the video from Buscemi's and the car wash and your ex-girlfriend [Moss] wasn't driving, it was you driving.

> *[Defendant]*: Yes, I was driving, she wasn't driving she was walking.

> *Mr. Dawidowicz*: Okay, now why did you—you don't remember telling me at the hospital [you were] the passenger, ma'am?

> *[Defendant]*: No, not at all—

> *Mr. Dawidowicz*: Okay.

> *[Defendant]*: —because that would have been a whole lie.

During the call, defendant claimed she did not drink any alcohol that night, but also informed Dawidowicz someone made her a "hottie toddy" because she was feeling ill, which was "a shot of Hennessey, some Motrin, and Nyquil." Defendant also confirmed that Moss was a pedestrian when the crash occurred.

At defendant's jury trial, Pisane and Stuart testified about their recollections of the accident as well as the extent of their injuries. The witness who identified Moss as the driver also testified, as well as the responding officers, the emergency medical technician who transported defendant to the hospital, and Dawidowicz. The jury found defendant guilty on all four counts. Defendant now appeals.

## II. STANDARD OF REVIEW

"Due process requires the prosecutor to introduce evidence sufficient for a trier of fact to find the defendant guilty beyond a reasonable doubt." *People v Jarrell*, 344 Mich App 464, 480; 1 NW3d 359 (2022). This Court reviews insufficient-evidence claims de novo. *People v Savage*, 327 Mich App 604, 613; 935 NW2d 69 (2019). In reviewing these challenges, this Court "defer[s]

to the fact-finder's role in determining the weight of the evidence and the credibility of the witnesses and must resolve conflicts in the evidence in favor of the prosecution." *Jarrell*, 344 Mich App at 480 (quotation marks omitted). Circumstantial evidence and reasonable inferences arising from such evidence are sufficient to prove the elements of a crime. *People v Parkinson*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 362683); slip op at 5.

## III. ANALYSIS

On appeal, defendant argues there was insufficient evidence to support that she was operating the Chrysler 200 when it crashed. We disagree.

"It is a fundamental principle of our system of justice that an accused's guilt must be proved beyond a reasonable doubt to sustain a conviction." *People v Prude*, 513 Mich 377, 384; 15 NW3d 249 (2024) (quotation marks and citation omitted). "[I]t is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Thus, the prosecution must prove the defendant's identity beyond a reasonable doubt to sustain a conviction. *Prude*, 513 Mich at 384; *Yost*, 278 Mich App at 356. The prosecution may prove identity with circumstantial evidence. See, e.g., *People v Bass*, 317 Mich App 241, 264; 893 NW2d 140 (2016). "Circumstantial . . . evidence is evidence of a fact, or a chain of facts or circumstances, that, by indirection or inference, carries conviction to the mind and logically or reasonably establishes the fact to be proved." *People v Xun Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020) (quotation marks and citation omitted). Circumstantial evidence "must facilitate reasonable inferences of causation, not mere speculation." *Id.* (quotation marks and citation omitted).

> [A]ppellate courts are not juries, and even when reviewing the sufficiency of the evidence, they must not interfere with the jury's role:
>
> > [An appellate court] must remember that the jury is the sole judge of the facts. It is the function of the jury alone to listen to testimony, weigh the evidence and decide the questions of fact. . . . Juries, not appellate courts, see and hear witnesses and are in a much better position to decide the weight and credibility to be given to their testimony. [*People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992) (quotation marks and citation omitted, second alteration in *Wolfe*).]

In addressing a defendant's insufficiency-of-the-evidence challenge, this Court must determine, when viewing the evidence in a light most favorable to the prosecution, "whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id.* at 515.

Defendant asserts on appeal that there was considerable confusion at the scene of the accident about who was driving the Chrysler 200. She correctly notes that Moss admitted to driving the car at first, meaning there was confusion as to who was driving. But defendant overlooks the fact that she later admitted to police that Moss was not the driver. This, in addition to the video evidence showing Moss as a pedestrian when the crash occurred, was enough for a

rational trier of fact to find that Moss was not the driver, resolving any possible confusion in this respect. *Wolfe*, 440 Mich at 515.

In support of her argument that she was merely a passenger, defendant points out that she was seen exiting the passenger-side door, and that both airbags deployed. Defendant fails to provide context for her argument. Pisane testified she saw that the woman who got out of the car had "crawled through[]" to get to the other side. Both Pisane and Stuart testified that they only saw one person in the car leading up to the crash, and only saw one person get out of the car after the crash. It is reasonable to infer that, if only one person was in the car, even if they exited from the passenger-side, that person had to have been operating the car. Thus, a rational trier of fact could find that the woman who exited through the passenger-side door was the driver. *Id*. We are similarly not persuaded by defendant's argument that there must have been more than one person in the car because both front-seat airbags deployed. To the contrary, multiple witnesses testified at trial that, although airbags normally only deploy when there is a passenger in the seat, they can also deploy without a passenger if the impact was in the right location. The jury considered testimony about the Chrysler 200's user guide, which indicated that the airbags only went off when there was "a properly seated adult," and that the Chrysler 200's passenger-side was the side that sustained the most damage. Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that there was no one seated in the passenger seat at the time of the crash. *Id*.

Defendant next challenges whether Dawidowicz ever actually interacted with her. First, in her Standard 4 brief, and for the first time on appeal, defendant challenges whether Dawidowicz truly spoke to her in the hospital, or whether it was someone else. Defendant did not raise this argument at trial, nor did defense counsel object when Dawidowicz testified that he had spoken to defendant at the hospital. "[A] party may not harbor error at trial and then use that error as an appellate parachute[.]" *People v Szalma*, 487 Mich 708, 726; 790 NW2d 662 (2010). Second, defendant argues there was insufficient evidence to establish that the woman in the telephone call recording with Dawidowicz was actually her. She argues that Dawidowicz had only met her once, briefly, a few days prior, and that it sounded like the woman was reading the spelling of defendant's middle name off of something instead of reciting it from memory. Dawidowicz testified that he did not think it sounded as though the woman was reading defendant's middle name off of something, and the jury was able to decide for itself whether or not this was the case when it heard the recording. "It is the function of the jury alone to listen to testimony, weigh the evidence and decide the questions of fact[,]" and we will not "interfere with the jury's role[.]" *Wolfe*, 440 Mich at 514-515.

Defendant also argues that Kasperski's testimony suggested that there was a third individual involved in the crash besides defendant and Moss. Kasperski testified that he spoke to defendant and Moss, both of whom were standing up, but other witnesses testified that she was laying on the ground next to the Chrysler 200 and receiving treatment for her injuries. "It is the jury's task to weigh the evidence and decide which testimony to believe." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). These testimonies are not necessarily in conflict. Further, even if they were, the jury was in the best position to carefully examine and resolve any factual inconsistency. It weighed the evidence and found there was no third party who may have been the driver, and "it is simply not the task of an appellate court to adopt inferences that the jury has spurned." *People v Hardiman*, 466 Mich 417, 431; 646 NW2d 158 (2002).

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Thomas C. Cameron
/s/ Adrienne N. Young