*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 21, 2024

Plaintiff-Appellee,

v

No. 359451
Midland Circuit Court
LC No. 20-008459-FC

CORY ODELL DERRICK,

Defendant-Appellant.

Before: M. J. KELLY, P.J., and BOONSTRA and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of assault with intent to commit great bodily harm, less than murder (AWIGBH), MCL 750.84; two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b; and assault with intent to commit criminal sexual penetration, MCL 750.520g. He was sentenced as a fourth-offense habitual offender, MCL 769.12, to 10 to 20 years' imprisonment for the AWIGBH conviction, 20 to 40 years' imprisonment for each of the CSC-I convictions, and 10 to 20 years' imprisonment for the assault with intent to commit criminal sexual penetration conviction—all to be served concurrently. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Defendant and the victim were introduced in early-April 2020 and they spent the ensuing days smoking crack cocaine. The victim reported that one night she was awakened by defendant striking her face. Defendant threw the victim to the ground where he penetrated her vaginally and anally. The victim escaped and later reported the assault to police. She underwent a sexual assault nurse examination (SANE), which eventually showed the presence of defendant's DNA in her anal cavity.

Defendant was charged for these offenses in April 2020. But, due in large part to the COVID-19 pandemic, his jury trial did not begin until September 2021. The jury selection portion of the trial was completed with some potential jurors appearing remotely over videoconferencing technology. Defendant was convicted as noted. At sentencing, defendant appeared remotely from jail. This appeal followed.

## II. STANDARDS OF REVIEW

Defendant raises several arguments on appeal to this Court. His claims of constitutional due-process violations are reviewed de novo. *People v Jackson*, 292 Mich App 583, 590; 808 NW2d 541 (2011). Unpreserved claims of constitutional error, meanwhile, are reviewed for plain error. *People v Kissner*, 292 Mich App 526, 541; 808 NW2d 522 (2011). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (alterations and quotation marks omitted).

Defendant also challenges the trial court's decision to conduct jury selection remotely. "A trial court's decision concerning the conduct and scope of voir dire is . . . reviewed for an abuse of discretion." *People v Orlewicz*, 293 Mich App 96, 100; 809 NW2d 194 (2011). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *People v Rogers*, 338 Mich App 312, 320; 979 NW2d 747 (2021). Additionally, "[a] trial court necessarily abuses its discretion when it makes an error of law." *People v Everett*, 318 Mich App 511, 516; 899 NW2d 94 (2017).

Defendant further raises several claims of ineffective assistance of counsel. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). In a preserved claim of ineffective assistance of counsel, the trial court's factual findings are reviewed for clear error, and its conclusions of law are reviewed de novo. *Id*. But, when an ineffective assistance claim is either not preserved or no evidentiary hearing was held, our review "is limited to errors apparent on the record." *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008); *Matuszak*, 263 Mich App at 48.

A claim of prosecutorial error[1] is generally reviewed de novo. *People v McGhee*, 268 Mich App 600, 630; 709 NW2d 595 (2005). But, unpreserved claims of prosecutorial error are reviewed for plain error affecting substantial rights. *People v Abraham*, 256 Mich App 265, 274; 662 NW2d 836 (2003). "Reversal . . . is warranted only when a plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id*. at 274-275 (citation omitted).

---

[1] Defendant calls the prosecutor's actions "prosecutorial misconduct." But, this phrase is a misnomer for any actions not involving violations of the rules of professional conduct or illegal activity by the prosecutor. *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). These lesser violations should be called "prosecutorial error." *Id.* Because defendant does not allege violations of the rules of professional conduct or illegal activity by the prosecutor, we refer to the challenged actions as "prosecutorial error."

This case also involves the interpretation of statutes, court rules, and the rules of evidence—all of which we review de novo. *People v Vaughn*, 344 Mich App 539, 549; 1 NW3d 414 (2022); *People v Matzke*, 303 Mich App 281, 283-284; 842 NW2d 557 (2013).

### III. JURY VOIR DIRE

Defendant argues that the trial court violated his constitutional due-process rights by allowing potential jurors to appear remotely over videoconferencing technology during the jury selection process. He contends this was a structural error requiring this Court's reversal of his convictions. We disagree.[2]

Criminal defendants have "a right to a fair and impartial jury." *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997). One way courts ensure a defendant receives a fair and impartial jury is through the jury selection process. See, e.g., *People v Jendrzejewski*, 455 Mich 495, 509; 566 NW2d 530 (1997). During jury selection, the parties seek to uncover any biases that might render the potential jurors incompetent. *Id*. On appeal, defendant points to the former version of MCR 6.006, amended effective September 9, 2022,[3] which was in effect at the time of his trial, to explain why the trial court violated his right to a fair and impartial jury. This former version of the court rule stated:

> (A) Defendant in the Courtroom or at a Separate Location. District and circuit courts may use two-way interactive video technology to conduct the following proceedings between a courtroom and a prison, jail, or other location: initial arraignments on the warrant or complaint, probable cause conferences, arraignments on the information, pretrial conferences, pleas, sentencings for misdemeanor offenses, show cause hearings, waivers and adjournments of extradition, referrals for forensic determination of competency, waivers and adjournments of preliminary examinations, and hearings on postjudgment motions to amend restitution. [Former MCR 6.006(A).]

In *People v Heller*, 316 Mich App 314, 318; 891 NW2d 541 (2016), this Court examined the specific types of proceedings permissible under former MCR 6.006(A), noting that the court rule explicitly listed the types of proceedings which could be conducted via videoconference technology. We reasoned that, "[b]y carefully delineating the proceedings amenable to the employment of two-way interactive video technology, the Supreme Court has telegraphed that this means of communication may not be used elsewhere." *Id*.

---

[2] Of note, by the time defendant's case proceeded to trial in September 2021, our Supreme Court had rescinded its administrative order permitting certain remote proceedings. See AO 2020-6, 505 Mich cxxxi (2020).

[3] The present version of MCR 6.006, which became effective on May 3, 2023, states in relevant part: "Circuit courts may use videoconferencing technology to conduct any non-evidentiary or trial proceeding." MCR 6.006(B)(1).

Here, although the trial court had discretion over the conduct of the trial, *Orlewicz*, 293 Mich App at 100, it erred because former MCR 6.006(A) explicitly omitted jury selection from the type of proceeding that could be conducted remotely via videoconferencing. See *Everett*, 318 Mich App at 516. The next question is whether this Court can give defendant the relief he seeks— reversal of his convictions and a new trial.

A defendant is not entitled to reversal unless, under the totality of the circumstances, the defendant demonstrates that the trial "was not fundamentally fair[.]" *People v Cline*, 276 Mich App 634, 638; 741 NW2d 563 (2007) (citations omitted). This proposition was codified by the Legislature in MCL 769.26:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

On appeal, defendant points to several unconvincing examples that he believes show a lack of fundamental fairness. For instance, he alleges he and his counsel were unable to adequately assess the responses from the jurors who appeared remotely. He says: "A small square on a screen across the courtroom is simply no substitute for all the ways information is telegraphed in person through body language, demeanor, voice intonation, level of eye contact, etc." Indeed, one of "the most important criteria in selecting a jury include a potential juror's facial expressions, body language, and manner of answering questions." *People v Unger*, 278 Mich App 210, 258; 749 NW2d 272 (2008). Even accepting as true defendant's contention that he was only able to view some of the potential jurors over a "small square on a screen," this does not necessarily lead to the conclusion he was unable to assess their "facial expressions, body language, and manner of answering questions," *id.*, because defendant does not point to any specific instances in the record demonstrating his inability to properly evaluate potential jurors.

Defendant also complains that jury selection was unfair because "there was likely a wide disparity in the quality of equipment and technology used by potential jurors, including internet speed." But, there is simply nothing in the record to support defendant's unsupported conclusion. To the contrary, the trial court explained:

> [I]f you are a juror that's connected by Zoom, and at any time you cannot hear or see something and you're part of the jury panel that has been initially selected, please, somehow either send a chat message or raise your hand or do something that we can hopefully be able to figure out what's going on with your connection.

Given the lack of examples in the record and the trial court's explicit instruction that jurors inform it of any connection issues, we reject defendant's allegation of a due-process violation.

Defendant next argues remote proceedings over videoconferencing hold "far less gravitas" than those held in person. The proposition that remote proceedings hold less gravitas has been readily accepted by our jurisprudence. For example, in *Heller*, this Court opined that a "virtual

-4-

appearance is not a suitable substitute for physical presence." *Heller*, 316 Mich App at 318. On the other hand, former MCR 6.006(A), which allowed certain remote proceedings, demonstrates that the fact that a remote proceeding occurred does not necessarily render that proceeding fundamentally unfair. Therefore, even if the hybrid-remote jury selection in this case held "less gravitas," this does not necessarily mean that these proceedings were unfair.

Defendant next speculates that the trial court failed to monitor "inappropriate conduct" by potential jurors. In making this argument, defendant does not cite to any example from the record demonstrating any inappropriate conduct by potential jurors. Moreover, the trial court explicitly accounted for the possibility of inappropriate conduct, telling the potential jurors appearing remotely:

> I don't want you to be checking your e[-]mail, browsing the internet, taking personal phone calls, sending text or doing social media things. If you're not on your cell phone for purposes of the connection, turn it off. Do not interact with any family members during the proceedings, or any pets. Don't walk away from the room or leave without having some permission from me to do that.

Given the lack of a record showing juror misconduct, defendant's argument fails to demonstrate any fundamental unfairness in the proceedings.

Finally, defendant argues that the trial court "missed several jurors who raised their hands to answer questions, and it is impossible to know what other important information it missed." But, there is nothing in the record showing the trial court actually missed any juror's question.[4] We also disagree with defendant's contention it is "impossible" to know what was missed. Defendant and his counsel were physically present during jury selection, yet there is no indication from the record that either one of them objected or thought the trial court "missed" a juror's question. See, e.g., *People v Szalma*, 487 Mich 708, 726; 790 NW2d 662 (2010) ("[A] party may not harbor error at trial and then use that error as an appellate parachute[.]").

Again, former MCR 6.006(A) did not permit courts to conduct jury selection remotely using videoconferencing technology, and the trial court erred to the extent it allowed jury selection to proceed in this fashion. But, to reverse defendant's convictions and grant defendant a new trial, it must "affirmatively appear that the error complained of has resulted in a miscarriage of justice." MCL 769.26. Defendant's examples fall well short of a miscarriage of justice, and, therefore, defendant is not entitled to a new trial on this basis.

---

[4] Defendant references the first day of trial as evidence the trial court "missed" juror questions. Upon review of that portion of the transcript, however, it appears the trial court judge merely verified with his law clerk that there were no questions from the jurors appearing remotely.

## IV. SENTENCING

Defendant next argues he is entitled to resentencing because his physical absence from his sentencing hearing was a plain error warranting this Court's reversal. Alternatively, defendant contends trial counsel was ineffective for failing to object to his remote appearance. We disagree.

### A. PRESERVATION

"To preserve for review by this Court a constitutional-error claim that implicates a defendant's due-process rights, the issue must be raised in the trial court." *People v Anderson*, 341 Mich App 272, 279; 989 NW2d 832 (2022). Defendant did not assert below he had a right to be present during sentencing. Thus, this issue is not preserved for appellate review. *Id*.

Regarding defendant's claim of ineffective assistance of counsel, a defendant preserves such a claim by either moving the trial court for a new trial, or by requesting a *Ginther*[5] hearing. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). Defendant neither moved for a new trial, nor a *Ginther* hearing on the basis of his physical presence at sentencing, so this issue is not preserved for this Court's review. *Id*.

### B. LAW AND ANALYSIS

"[A] criminal defendant has a constitutional right to be present at any stage of a trial during which substantial rights might be adversely affected, including during sentencing." *Anderson*, 341 Mich App at 281. The former MCR 6.006(A), which was in effect at the time of the proceedings, outlined the types of proceedings at which a defendant could appear remotely. These included "sentencing for misdemeanor offenses." Former MCR 6.006(A). Defendant was convicted of four offenses—all of which are felonies. Therefore, under the court rule, he had a right to be present at sentencing.

In *Heller*, 316 Mich App at 318, this Court held that a virtual appearance is not an adequate substitute for a criminal defendant's physical presence at felony sentencing:

> Sentencing by video dehumanizes the defendant who participates from a jail location, unable to privately communicate with his or her counsel and likely unable to visualize all the participants in the courtroom. Moreover, a courtroom is more than a location with seats for a judge, jury, witnesses, defendant, prosecutor, defense counsel and public observers. The courtroom setting provides a dignity essential to the process of criminal adjudication. Isolating a defendant from that setting during what may be the most decisive moment of his or her life clashes with the judge's duty to acknowledge the humanity of even a convicted felon. [*Id*. at 319 (alterations, quotation marks, and citations omitted).]

---

[5] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

There is no evidence defendant waived his physical appearance at sentencing. Thus, defendant's physical absence from the courtroom during his felony sentencing was a plain error.

Under the plain error standard, a defendant is entitled to resentencing if the defendant demonstrates "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Anderson*, 341 Mich App at 283, quoting *Rosales-Mireles v United States*, 585 US 129, 134-135; 138 S Ct 1897; 201 L Ed 2d 376 (2018). This means that the defendant "must successfully establish that, had he been physically present in the courtroom, there is a reasonable probability that his sentence would have been different." *Anderson*, 341 Mich App at 283.

Defendant notes that, when he was given an opportunity to speak during sentencing, he "gave a speech on how the court did not have jurisdiction over him, while offering conflicting rationals [sic] for such a statement." He believes that "[h]ad counsel been with him, he could have taken steps to stop [defendant] from making statements that did not help his argument of innocence, and instead made [defendant] look foolish." Charitably speaking, this argument could be interpreted as defendant's belief that his sentence would have been different had he been physically present with counsel at sentencing.

The trial court articulated on the record its reasons for imposing defendant's sentence. While the trial court referenced defendant's statements at sentencing, there is no indication that the trial court imposed a more severe sentence on the basis of these statements. In the absence of any meaningful explanation from defendant describing how his allocution negatively affected his sentence, defendant has failed to establish that he is entitled to resentencing. Moreover, we are not persuaded by defendant's speculation that, had he been physically present at sentencing, his trial counsel could have prevented him from appearing "foolish."

With respect to defendant's claim of ineffective assistance of counsel, "[e]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009) (citation omitted). "To establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). As discussed, defendant's arguments on appeal fail to demonstrate a reasonable probability the result of the proceedings would have been different. Therefore, defendant has failed to establish counsel was ineffective for failing to object to his remote participation at sentencing.

## V. TEXT MESSAGES

Defendant contends trial counsel's alleged failure to impeach the victim with a text message exchange she had with defendant amounts to ineffective assistance of counsel.[6] We disagree.

Regarding the first part of the ineffective-assistance-of-counsel-test, defendant argues trial counsel's performance fell below an objective standard of reasonableness when counsel failed to impeach the victim about a flirtatious message exchange she had with defendant in the days before the sexual assault. Although this exchange was not admitted as evidence, the victim did testify about this message exchange. For example, on direct examination, the victim testified:

> *Q*. Okay. Did you ever consent via text to having sex or anal or vaginal intercourse with [defendant]?
>
> *A*. I did not consent.
>
> *Q*. Okay. All right. Is it fair to say that the . . . text messages were somewhat flirtatious?
>
> *A*. Yes.
>
> *Q*. But, they go far short of consent to any sex, correct?
>
> *A*. Correct.

Trial counsel further questioned the victim about the exchange during cross-examination:

> *Q*. Okay. And, you had previously been messaging with [defendant] about buying . . . drugs; is that true?
>
> *A*. I don't remember.
>
> *Q*. You don't remember saying that earlier today?
>
> *A*. I do not remember . . . messaging him prior to that.
>
> *Q*. Okay.
>
> *A*. I remember messaging him at some point while I had known him, yes.

---

[6] Defendant moved this Court for an evidentiary hearing to consider counsel's failure to admit into evidence the text message exchange with the victim, which we denied. *People v Derrick*, unpublished order of the Court of Appeals, entered December 12, 2023 (Docket No. 359451). Because no evidentiary hearing was held, our review is limited to mistakes apparent from the record. *Horn*, 279 Mich App at 38.

*Q.* Well, at some point in time, not necessarily involving this incident.

*A.* Correct.

*Q.* So, how long have you known [defendant]?

*A.* It was only a couple days before the incident had happened.

*Q.* Okay. So, I'm assuming that those text messages that you're referring to happened in those couple of days, correct?

*A.* Yes.

*Q.* Okay. Since you claim that you didn't know him before, and—

*A.* Correct.

*Q.* —I'm assuming you haven't had contact with him since.

*A.* Correct.

*Q.* Okay. So, when we're talking about that, we're actually talking about those two days?

*A.* Yes, correct.

*Q.* Okay. So you were messaging [defendant] about obtaining drugs, correct?

*A.* Yes.

On appeal, defendant argues trial counsel was ineffective for failing to impeach the victim about these messages. He says this evidence was necessary to show he and the victim "were flirting and that there was an understanding between the two that sexual favors were going to be exchanged between the two of them in return for [defendant] providing [the victim] with the drugs she had been using." But, defendant fails to account for the relevant parts of the victim's testimony. Trial counsel *did* question the victim about the message exchange. It was not necessary for trial counsel to impeach the victim about the flirtatious nature of the messages, because the victim had already agreed on direct examination that the messages were "somewhat flirtatious."

There is also no merit to defendant's contention that trial counsel was ineffective for failing to question the victim about any "understanding" she had with defendant to exchange sex for drugs. While the messages were suggestive in nature, they do not demonstrate a sex-for-drugs agreement. Indeed, the victim expressly denied that any such agreement existed. Given the victim's testimony on direct and cross-examination, it is unclear how counsel's further inquiry into this issue caused his representation to fall below an objective standard of reasonableness.

It is also unlikely that a different result would have occurred had trial counsel questioned the victim about her specific statements in the message exchange. Defendant argues impeachment

on this basis was necessary to show the sexual encounter was consensual. But, from the context of trial counsel's arguments throughout trial, it seems his strategy was to emphasize the victim's drug addiction, and to point out that, as a result of her addiction, her allegations against defendant were untrustworthy. The victim's testimony that the text messages were "flirtatious," did not demonstrate an express agreement to exchange sex for drugs, and was actually *consistent* with the context of the messages. A strategy to impeach the victim about the message exchange risked undermining trial counsel's strategy of undermining the victim's credibility. Thus, defendant has also not established the second prong of the ineffective-assistance-of-counsel test.

## VI. CLOSING ARGUMENTS

Defendant argues that the prosecutor made certain statements during closing argument that impermissibly (1) vouched for the victim's credibility; and (2) appealed to the jurors' emotions. Defendant further claims trial counsel was ineffective for failing to object to these statements. We disagree.

### A. PRESERVATION

A criminal defendant preserves a claim of prosecutorial error when they make a timely and specific objection to the prosecutor's conduct. *Unger*, 278 Mich App at 234-235. Defendant did not object to the prosecutor's statements during closing arguments, so this issue is not preserved for appellate review. *Id.*

Defendant also claims trial counsel was ineffective for failing to object to the prosecutor's statements. Again, defendant did not preserve a claim of ineffective assistance of counsel because he did not move for a new trial or a *Ginther* hearing on this basis. Thus, his present claim of ineffective assistance of counsel is unpreserved. *Petri*, 279 Mich App at 410.

### B. LAW AND ANALYSIS

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial [error] is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Whether a prosecutor's remarks were improper depends on the unique facts of a case, and, therefore, the prosecutor's statements "must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *People v Callon*, 256 Mich App 312, 330; 662 NW2d 501 (2003). "The prosecution has wide latitude in arguing the facts and reasonable inferences, and need not confine argument to the blandest possible terms." *Dobek*, 274 Mich App at 66. A prosecutor impermissibly vouches for a witness's credibility when they imply they have "special knowledge" of the witness's truthfulness. *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). "But a prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *Id.*

Defendant's allegations of prosecutorial error arise from the following statements made during the prosecutor's closing argument:

You heard about what happened on April 5th. You heard that [the victim], who had a drug problem, had been going around with some people and was smoking some crack. You heard that. She admitted that. She's not hiding behind it; she had a problem. She had an addiction. People have addictions, it doesn't make them untrustworthy or unbelievable.

* * *

Then you heard her . . . yesterday, almost a year and a half after this incident and you can still see how emotional she was. You can absolutely tell something happened to [the victim] that she didn't want. The same story, the same version of events for a year and a half. All this with the backdrop of Covid, [sic] right? . . . [N]obody knew what was going on during Covid [sic]. But, having to sit home and isolation [sic] with all of that on your mind, that must have been unbearable.

Defendant first claims that the prosecutor's statements impermissibly "vouched" for the victim's testimony. He says the victim's drug addiction lacked relevance, and that the prosecutor only made the statements about her addiction to "inflame the jury by eliciting sympathy." Defendant believes the prosecutor's comment about the consistency of the victim's story was similarly meant to inflame the jury.

As an initial matter, there is no merit to defendant's claim that the victim's drug addiction was irrelevant to the proceedings. Both the prosecutor and defendant's trial counsel questioned the victim at length about her addiction, and defendant does not challenge this line of questioning. Thus, defendant's claim that the victim's addiction was irrelevant is an appellate parachute that is inappropriate for this Court's review. See *Szalma*, 487 Mich at 726 ("[A] party may not harbor error at trial and then use that error as an appellate parachute[.]").

Moreover, the prosecutor's statements did not imply the prosecutor had "special knowledge" of the victim's credibility. From the beginning of the trial, trial counsel argued that the victim lacked credibility due to her drug addiction. The prosecutor's reference to the victim's addiction related to her credibility, and was therefore a permissible challenge to that defense strategy. *Thomas*, 260 Mich App at 455.

Defendant next argues that these statements amounted to prosecutorial error because they impermissibly appealed to jurors' emotions. Defendant suggests the prosecutor's statement about the victim's drug addiction was highly inflammatory, evoking an emotional response from jurors. While defendant cites to some authorities discussing the use of emotional language during argument, he fails to explain why a statement about the victim's drug addiction would cause such an emotional response from the jurors. In the absence of such an argument, we consider this argument abandoned. See *Petri*, 279 Mich App at 413 ("Defendant may not leave it to this Court to search for a factual basis to sustain or reject his position."). Even if this argument was not abandoned, however, the victim's drug addiction was something both the prosecutor and defendant's trial counsel questioned the victim about during her testimony. It is unclear why defendant believes statements about the victim's drug addiction were proper during questioning, but improper during closing argument. Thus, we reject this argument as a basis to declare prosecutorial error.

-11-

Having found no basis for defendant's claim of prosecutorial error, there is also no basis for defendant's claim that trial counsel was ineffective for failing to object to the prosecutor's statements. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

## VII. DISCLOSURE

Defendant argues his due-process rights were violated when the prosecutor failed to timely disclose the results of the victim's SANE, and when the trial court denied defendant's motion to impeach the victim with evidence of her plea in a separate drug case. We disagree.

In support of his argument, defendant cites to these portions of MCR 6.201:

(A) Mandatory Disclosure. In addition to disclosures required by provisions of law other than MCL 767.94a, a party upon request must provide all other parties:

* * *

(6) a description of and an opportunity to inspect any tangible physical evidence that the party may introduce at trial, including any document, photograph, or other paper, with copies to be provided on request. A party may request a hearing regarding any question of costs of reproduction, including the cost of providing copies of electronically recorded statements. On good cause shown, the court may order that a party be given the opportunity to test without destruction any tangible physical evidence.

(B) Discovery of Information Known to the Prosecuting Attorney. Upon request, the prosecuting attorney must provide each defendant:

(1) any exculpatory information or evidence known to the prosecuting attorney;

(2) any police report and interrogation records concerning the case, except so much of a report as concerns a continuing investigation;

(3) any written or recorded statements, including electronically recorded statements, by a defendant, codefendant, or accomplice pertaining to the case, even if that person is not a prospective witness at trial;

(4) any affidavit, warrant, and return pertaining to a search or seizure in connection with the case; and

(5) any plea agreement, grant of immunity, or other agreement for testimony in connection with the case. [MCR 6.201(A)(6) and (B)(1)-(5).]

Defendant apparently believes the court rule was violated when the prosecutor did not immediately turn over the results of the SANE. Defendant's trial was scheduled to start on October 19, 2020.[7] The prosecutor explained to the trial court his failure to immediately disclose the results of the SANE, but that the results had since been given to defendant's trial counsel. As a result of this evidence, the prosecutor wanted to revise defendant's charges and asked that the case be remanded to the district court for a preliminary examination on these revised charges in relation to the specific evidence contained in the SANE report. Defense counsel agreed, and the case was remanded.

Defendant's assertion that MCR 6.201(A) was violated is patently incorrect. The court rule speaks only to the base requirement that inculpatory evidence be disclosed to a defendant. Plainly, this evidence was disclosed to defendant—albeit several months after defendant was charged, but there is no temporal requirement listed in the rule. Therefore, there is no error under this specific court rule.

Defendant's argument as to the failure to timely disclose the SANE report could be interpreted as a *Brady*[8] violation, which requires "the prosecution to disclose evidence in its possession that is exculpatory and material, regardless of whether the defendant requests the disclosure." *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534 (2007). To establish a *Brady* violation, however, a defendant must show:

> (1) that the state possessed evidence favorable to the defendant; (2) that the defendant did not possess the evidence nor could the defendant have obtained it with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. [*People v Cox*, 268 Mich App 440, 448; 709 NW2d 152 (2005).]

Defendant does not argue the elements of a *Brady* violation, and it is therefore unnecessary for this Court to consider this line of analysis. See *Petri*, 279 Mich App at 413.

Defendant next claims of the trial court violated MCR 6.201(B) when it ruled that evidence of the victim's plea in her separate drug case was inadmissible. At trial, defendant requested that he be allowed to cross-examine the victim regarding a separate case she had pending in drug court. The trial court denied the request, concluding that this evidence was inadmissible under MCL 600.1070.[9] Defendant apparently believes that MCR 6.201(B) required the admission of this

---

[7] Of note, this was, itself, a rescheduled trial date from the original scheduled date of September 14, 2020.

[8] *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

[9] The statute states, in relevant part:

> (1) Upon admitting an individual into a drug treatment court, all of the following apply:

-13-

evidence. Under the plain language of the court rule, the prosecutor is only required to *disclose* to defendant "any plea agreement, grant of immunity, or other agreement for testimony in connection with the case." MCR 6.201(B)(5). Defendant's argument on appeal does not challenge the disclosure of the evidence. Rather, he challenges its *admissibility*. Disclosure and admissibility are separate issues. Thus, a due-process violation cannot be found on the basis of a failure to deem the evidence admissible under MCR 6.201(B)(5).

Defendant does, however, suggest that evidence of the victim's plea was admissible under MRE 410. MRE 410 provides:

(a) Prohibited Uses. In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions:

(1) a guilty plea that was later withdrawn or vacated;

(2) a nolo contendere plea—except that, to the extent that evidence of a guilty plea would be admissible, evidence of a nolo contendere plea to a criminal charge may be admitted in a civil proceeding to defend against a claim asserted by the person who entered the plea;

(3) a statement made during a proceeding on either of those pleas under MCR 6.302 or MCR 6.310, a comparable state procedure, or Fed R Crim P 11; or

(4) a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn or vacated guilty plea.

(b) Exceptions. The court may admit a statement described in subrule (a)(3) or (4):

---

(a) For an individual who is admitted to a drug treatment court based upon having criminal charges currently filed against him or her, the court shall accept the plea of guilty or, in the case of a juvenile, the admission of responsibility.

(b) For an individual who pled guilty to, or admitted responsibility for, criminal charges for which he or she was admitted into the drug treatment court, the court shall do either of the following:

(*i*) In the case of an individual who pled guilty to an offense that is not a traffic offense and who may be eligible for discharge and dismissal pursuant to the agreement with the court and prosecutor upon successful completion of the drug treatment court program, the court shall not enter a judgment of guilt or, in the case of a juvenile, shall not enter an adjudication of responsibility. [MCL 600.1070(1)(a) and (b)(*i*).]

(1) in any proceeding in which another statement made during the same plea or plea discussions has been introduced, if in fairness the statements ought to be considered together; or

(2) in a criminal proceeding for perjury or false statement, if the defendant made the statement under oath, on the record, and with counsel present.  [MRE 410.]

We reject defendant's suggestion that MRE 410 applies in this instance because the rule of evidence clearly applies to evidence of a *defendant's* plea discussions, not a witness's.

## VIII.  SPEEDY TRIAL

Defendant next claims his right to a speedy trial was violated when the trial court failed to timely bring this case to trial.  We disagree.

It is necessary, as an initial matter, to dissect defendant's argument on this issue.  While he characterizes this issue as one involving his "speedy trial" rights, he also cites to MCL 780.131, which involves the 180-day rule, as evidence the trial court violated his right to a speedy trial.  But, "[t]he 180-day rule is distinct from a criminal defendant's constitutional right to a speedy trial under our federal and state Constitutions . . . ."  *People v Witkoski*, 341 Mich App 54, 60; 988 NW2d 790 (2022).  Because a defendant's speedy-trial rights are distinct from their rights under MCL 780.131, we analyze these authorities as separate arguments.

## A.  180-DAY RULE

Defendant argues the trial court violated his speedy-trial rights under MCL 780.131.  MCL 780.131(1) states, in relevant part:

(1) Whenever the department of corrections receives notice that there is pending in this state any untried warrant, indictment, information, or complaint setting forth against any inmate of a correctional facility of this state a criminal offense for which a prison sentence might be imposed upon conviction, the inmate shall be brought to trial within 180 days after the department of corrections causes to be delivered to the prosecuting attorney of the county in which the warrant, indictment, information, or complaint is pending written notice of the place of imprisonment of the inmate and a request for final disposition of the warrant, indictment, information, or complaint.

By its plain language, the statute only applies to "inmate[s] of a correctional facility of this state[.]" MCL 780.131(1).  In other words, "the rule is inapplicable to pretrial detainees[.]" *People v Chavies*, 234 Mich App 274, 280; 593 NW2d 655 (1999), overruled in part on other grounds *People v Williams*, 475 Mich 245, 245; 716 NW2d 208 (2006).  It is undisputed defendant was a pretrial detainee, and, therefore, his reliance on MCL 780.131 is misplaced.

## B. SPEEDY TRIAL

Criminal defendants in Michigan are entitled to a "speedy and public" trial. US Const, Am VI; Const 1963, art 1, § 20. The speedy-trial guarantee is "designed . . . to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges[.]" *United States v MacDonald*, 456 US 1, 2; 102 S Ct 1497; 71 L Ed 2d 696 (1982). Called the "*Barker* test,"[10] courts should balance the following factors in determining whether a defendant's speedy-trial rights have been violated: "(1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant." *People v Cain*, 238 Mich App 95, 112; 605 NW2d 28 (1999). "[N]one of the four factors [are] either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Barker v Wingo*, 407 US 514, 533; 92 S Ct 2182; 33 L Ed 2d 101 (1972). Instead, courts should "engage in a difficult and sensitive balancing process." *Id*. With respect to the fourth prong, however, there is a rebuttable presumption of prejudice if the delay exceeds 18 months. *Cain*, 238 Mich App at 112.

In looking to the first factor of the *Barker* test, the time period begins when the defendant is arrested. *Williams*, 475 Mich at 262. The span between defendant's arrest and trial was less than 18 months. Thus, prejudice is not presumed in this instance, *Cain*, 238 Mich App at 112, and defendant must demonstrate he was prejudiced by the delay. *Williams*, 475 Mich at 262.[11]

"[I]n determining prejudice to a defendant, we do not look at how the prosecutor's case was improved during the delay, but to whether the defendant's defense was degraded." *People v Holtzer*, 255 Mich App 478, 494; 660 NW2d 405 (2003). Here, defendant casts general aspersions that he was prejudiced by the delay, arguing he suffered "multiple medical issues" during pretrial confinement, and that the delay hindered his ability to assist his defense. While the record is replete with defendant's pleas to the court for pretrial release due to his medical conditions, these are insufficient to establish prejudice. First, the burden is on defendant to show prejudice. *Williams*, 475 Mich at 262. By failing to specifically cite to these documents in reference to his showing of prejudice, defendant has not met his burden. Second, this evidence does not show defendant's defense was degraded as a result of his pretrial incarceration. Defendant was only confined to pretrial incarceration for some of the time before trial. The fact that he suffered vague "medical conditions" during his partial pretrial incarceration does not establish his defense was degraded. Because defendant has failed to establish the prejudice prong of the *Barker* test, we reject his claim that the trial court violated his right to a speedy trial.

---

[10] *Barker v Wingo*, 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972).

[11] Defendant impliedly agrees that prejudice is not presumed, but he suggests this Court should ignore the 18-month threshold, contending that the delay in this case is "not all that entirely different than 18 months." This argument is patently meritless given our jurisprudence. See *Cain*, 238 Mich App at 112.

## IX. THE VICTIM'S CRIMINAL RECORD

Defendant contends the prosecutor erred when he "manipulated" the court rules so evidence of the victim's conviction in drug court could not be admitted into evidence. We disagree.

### A. PRESERVATION

Again, a criminal defendant preserves a claim of prosecutorial error when they make a timely and specific objection to the prosecutor's conduct. *Unger*, 278 Mich App at 234-235. While defendant objected the to the exclusion of the victim's conviction for impeachment purposes, he did not specifically argue that the prosecutor erred in relation to the exclusion of this evidence. Given defendant's failure to specifically challenge the prosecutor's actions, this issue is unpreserved.

### B. LAW AND ANALYSIS

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial [error] is whether a defendant was denied a fair and impartial trial." *Dobek*, 274 Mich App at 63. Defendant cites to MCL 600.1064(4), a provision of law governing drug treatment courts. This statute states:

> (4) Except as otherwise permitted in this act, any statement or other information obtained as a result of participating in a preadmission screening and evaluation assessment under subsection (3) is confidential and is exempt from disclosure under the freedom of information act, 1976 PA 442, MCL 15.231 to 15.246, and shall not be used in a criminal prosecution, unless it reveals criminal acts other than, or inconsistent with, personal drug use.

According to defendant, the prosecutor pushed the victim's case to drug court in order to avoid the victim's disclosure of certain aspects of her life—specifically that the victim was "in the practice of exchanging sex for drugs[.]" There are two problems with this argument. First, the statute plainly proscribes use of a drug court defendant's "personal drug use" in a "criminal prosecution" against *that defendant*. This case involves the criminal prosecution of another defendant, and MCL 600.1064(4) is therefore inapplicable to these proceedings. Second, there is no evidence in the record demonstrating the prosecutor encouraged the victim's participation in drug court for this purpose. Indeed, the prosecutor in this case explained that he "had no interaction with that case in any way, shape or form[,]" and that the victim's case was handled by another prosecutor in his office. Defendant has failed to demonstrate prosecutorial error and, therefore, we reject this argument on appeal.

Affirmed.

/s/ Michael J. Kelly
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron

-17-