*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

WILLIAM ELLIOTT BLANDER,

Defendant-Appellant.

UNPUBLISHED
July 15, 2025
2:23 PM

No. 366048
Oakland Circuit Court
LC No. 2020-275584-FH

Before: LETICA, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of assault with intent to commit great bodily harm less than murder by strangulation (assault by strangulation), MCL 750.84(1)(b), and two counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b)(force or coercion).[1] The trial court sentenced him to concurrent terms of 9 to 20 years' imprisonment for the assault by strangulation conviction and 10 to 15 years' imprisonment for each CSC-III conviction. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Defendant's convictions arise from his relationship with RV. Defendant and RV became intimately involved after they met at a jobs' program. RV subsequently started to question the relationship after learning things about defendant from his family and after seeing defendant discipline RV's five-year-old son.

On June 9, 2020, RV still kept in contact with defendant even though she characterized the intimate part of their relationship as finished. At defendant's request, RV drove her minivan to Bloomfield in the afternoon to pick up defendant from work. They drove around and talked, and defendant sought to continue the intimate relationship.

---

[1] Defendant was acquitted of one count of CSC-III.

They also drove to defendant's cousin's home where RV heard a conversation between the men that made her uncomfortable. When defendant's cousin asked for beer from a local store, RV volunteered to pick it up because it would give her an opportunity to leave; however, defendant accompanied RV to the store. And they dropped the beer off at the cousin's home.

RV began to drive her van when defendant expressed anger about RV's earlier contact with an ex-boyfriend. Defendant threatened RV with a knife, but then began to strangle her with his hands. RV could not breathe or scream and pushed herself out of her vehicle to escape defendant's grasp. RV next recalled waking up on the pavement with an injured ankle and blood streaming from her forehead.

Defendant attempted to convince RV that she had been "jumped" and that they had to leave because the police were on their way. Defendant pushed RV into the van and urged her to get in the back because he did not want anyone to see her condition. In the mirror, RV saw that she was bleeding from her head and nearly used an entire roll of paper towel to absorb the blood. RV tried to convince defendant to take her to a hospital because she was dizzy and weak. Although defendant said he would drive her to the hospital, he instead engaged in sexual relations with RV in the van despite her refusal. Defendant then parked on a Pontiac street near his female cousin's house. Defendant dozed off, but woke anytime RV moved. RV did not attempt to sleep because she feared what defendant might do to her and thought she had a concussion. And, due to her injured ankle, RV was unable to run away.

The next morning, RV asked defendant to go to a gas station for water and cigarettes. Once there,[2] defendant asked a young man to purchase those items in the store; however, the young man was unable to buy the cigarettes. Defendant eventually entered the store. RV managed to get to the driver's seat, close the door, and lock it. Defendant ran out of the gas station, pounded on the window, and cursed at RV, but she was able to drive away.

RV went to her cousin's home where a 911 call was placed. When the police arrived, RV's adult and young cousins were present. RV disclosed the physical assault to the police. She did not initially reveal the sexual assault, explaining that her cousins disapproved of defendant, and she was embarrassed to admit what had happened in front of the young cousins. Photographs of RV's injuries were taken.

Ultimately, RV did disclose the sexual assaults to the police and participated in sexual assault and strangulation examinations at HAVEN within two days of the assault. At trial, RV also testified about a prior assaultive act by defendant upon her in February 2020 that left her with a black eye as well as the events that occurred in June 2020.

At trial, MS, another woman who was dating defendant in May 2020, testified about a recent assault upon her by defendant. On June 6, 2020, MS was driving her car with defendant as a passenger. Defendant criticized the manner of MS's driving and threatened to kill her. She decided to pick up food from a local restaurant and perform the delivery. In the car, defendant grabbed MS around the neck and arm. After MS bent defendant's finger back, defendant released

---

[2] Corroborating video evidence from the gas station was admitted at trial.

her.  Defendant then jumped into the driver's seat and threatened to hit MS with the car.  MS was able to flee into a local business and call the police.  Her injuries were also photographed.

Additionally, a sexual assault nurse examiner (SANE), sheriff's deputies, and the investigating sergeant testified.  Defendant represented himself for the majority of the trial with two attorneys serving as advisory counsel.[3]  After defendant unsuccessfully tried to elicit testimony during his cross-examination of the investigating sergeant, he asked that advisory counsel represent him, acknowledging that counsel would handle the case to completion.  Despite defendant's contention that the sexual relations with RV were consensual and his attempt to file a complaint that RV had made a false police report against him, the jury convicted defendant of the assault by strangulation charge and two counts of CSC-III.

## II.  OTHER-ACTS EVIDENCE

Defendant first alleges that the trial court erred in admitting prior assaultive acts under MCL 768.27b and failed to conclude that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice.  We disagree.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal."  *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019) (footnote omitted).  When the preserved error is nonconstitutional, it is subject to harmless-error review.  *Id.*; see also MCL 769.26 ("No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of . . . improper admission or rejection of evidence . . . unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.").  If the error is constitutional or nonconstitutional and unpreserved, the defendant must demonstrate plain error that affected substantial rights.  *Thorpe*, 504 Mich at 252.  "The reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings."  *Id*. at 252-253 (footnote omitted).

Before trial, the prosecutor filed a notice of intent to introduce other-acts evidence, and defendant filed a response opposing their introduction.  Therefore, this issue is preserved.[4]

---

[3] Although the trial court allowed defendant to waive the right to counsel, it prohibited defendant from questioning his victims, RV and MS.  Instead, defendant's advisory counsel performed those examinations.

[4] Defendant also contends that MCL 768.27b is unconstitutional.  However, there is no indication that defendant challenged the constitutionality of MCL 768.27b in the trial court.  Rather, defendant only challenged the constitutionality of MCL 768.27c.  Accordingly, this unpreserved, constitutional claim of error is reviewed for plain error affecting substantial rights.  However, the erroneous admission of evidence does not violate a defendant's constitutional rights to due process of law unless it so infuses the trial with unfairness.  *Estelle v McGuire*, 502 US 62, 75; 112 S Ct 475; 116 L Ed 2d 385 (1991).  Moreover, MCL 768.27b does not categorically abrogate the

"A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). A court abuses its discretion when its decision is "outside the range of principled outcomes." *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013). "Preliminary issues of law, including the interpretation of the rules of evidence and the effect of constitutional provisions, are reviewed de novo." *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011).

At the time of trial, MCL 768.27b stated, in pertinent part:

(1) . . . [I]n a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

\* \* \*

(6) As used in this section:

(a) "Domestic violence" or "offense involving domestic violence" means an occurrence of 1 or more of the following acts by a person that is not an act of self-defense:

(*i*) Causing or attempting to cause physical or mental harm to a family or household member.

(*ii*) Placing a family or household member in fear of physical or mental harm.

(*iii*) Causing or attempting to cause a family or household member to engage in involuntary sexual activity by force, threat of force, or duress.

(*iv*) Engaging in activity toward a family or household member that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

(b) "Family or household member" means any of the following:

(*i*) A spouse or former spouse.

(*ii*) An individual with whom the person resides or has resided.

---

admission of propensity evidence under MRE 404(b), but reflects the Legislature's policy choice to allow juries to consider other-acts evidence for propensity purposes in certain types of cases. *People v Cameron*, 291 Mich App 599, 609-610; 806 NW2d 371 (2011); see e.g., *People v Pattison*, 276 Mich App 613, 620; 741 NW2d 558 (2007). For these reasons, we reject defendant's challenge to the constitutionality of MCL 768.27b.

(*iii*) An individual with whom the person has or has had a child in common.

(*iv*) An individual with whom the person has or has had a dating relationship. As used in this subparagraph, "dating relationship" means frequent, intimate associations primarily characterized by the expectation of affectional involvement. This term does not include a casual relationship or an ordinary fraternization between 2 individuals in a business or social context.

(c) "Sexual assault" means a listed offense as that term is defined in section 2 of the sex offenders registration act, 1994 PA 295, MCL 28.722.

At the time of defendant's trial, MRE 403[5] stated:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In *People v Berklund*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367568), slip op at 2-3, the defendant arranged to meet the victim before tying her up and assaulting her. Eventually, the defendant untied the victim, and she was able to call the police from a gas station. The prosecution sought to admit the defendant's prior conviction of the sexual assault of a 14-year old girl, but the defendant protested, noting that his current charge pertained to domestic violence, not a sexual offense. This Court determined that the plain language of MCL 768.27b contained no provision that precluded consideration of a prior sexual offense in a trial for domestic violence. Additionally, the defendant's challenges premised on relevancy and admission of propensity evidence were also rejected. *Id*. at slip op 4-6. Rather, the *Berklund* Court concluded the following analysis should apply to determine admissibility:

[W]hen applying MRE 403 to evidence admissible under MCL 768.27b, courts should weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect. Accord [*People v Watkins*, 491 Mich 450, 487; 818 NW2d 296 (2012)].

But, as with MCL 768.27a, this does not mean that other-acts evidence admissible under MCL 768.27b may never be excluded by MRE 403. The same nonexhaustive list of considerations identified in *Watkins* applies:

(1) the dissimilarity between the other acts and the charged crime,
(2) the temporal proximity of the other acts to the charged crime,
(3) the infrequency of the other acts, (4) the presence of intervening

---

[5] MRE 403 now states: The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. This list of consideration is meant to be illustrative rather than exhaustive. [*Watkins*, 491 Mich at 487-488.]

These considerations provide "a tool to facilitate, not a standard to supplant," a trial court's MRE 403 analysis. *People v Uribe*, 499 Mich 921, 921; 878 NW2d 474 (2016). [*Berklund*, ___ Mich App at ___; slip op 10.]

Applying the factors, the trial court did not abuse its discretion by admitting the other-acts evidence. RV began her relationship with defendant after meeting at an employment office. But, she began to see and learn things about defendant's demeanor that caused her concern. RV testified that she was driving her van when defendant pulled a knife and began to choke her neck on June 10, 2020. In order to escape defendant's grasp, RV deliberately fell out of the moving van, causing a severe bleed from her forehead and a swollen ankle. RV was unable to escape, asserting that defendant kept a watchful eye over her and she could not run because of her ankle. Ultimately, defendant's entry into a gas station allowed her to escape. RV also testified that defendant had previously assaulted her in February 2020 when he inflicted a black eye after an argument about her son.

Similarly, MS testified that she began dating defendant in May 2020. She also saw "flags" about defendant because he would get into verbal altercations with his own mother. Additionally, defendant was verbally critical of MS, including the manner and routes in which she drove. On June 6, 2020, MS was driving her car and running errands with defendant when he was verbally abusive and threatened to kill her. MS decided to make a food delivery. She pulled into the restaurant parking lot when defendant grabbed her neck and arm. MS was outside the vehicle and being dragged. In order to release defendant's grasp, MS bent his finger back. Defendant jumped into the driver's seat and threatened to hit MS with her own car. MS sought aid from a local business.

Applying the factors adopted by the *Berklund* Court, there is a similarity between the assault upon RV and MS. Both occurred in moving vehicles and included the grabbing of the victim's neck accompanied by threats to kill. The acts occurred within three days of each other. And, throughout their relationships with defendant, both victims observed him make frequent threats. Although the victims were alone with defendant at the time of the assaults, the assaults were promptly reported to relatives or bystanders, and the police were called. Both victims suffered injuries consistent with their description of the attack by defendant. An analysis of these factors supports the admission of the evidence in accordance with MRE 403, MRE 404(b), and MCL 768.27b.

And, although all other-acts evidence may be characterized as prejudicial, the prosecution does not have to use the least prejudicial evidence to prove its case. *People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011). Because prior bad acts evidence may be relevant and pertinent to credibility, any prejudicial effect of its admission did not substantially outweigh its

probative value. *Id*. at 612. In light of the record, the trial court did not abuse its discretion in admitting the evidence under MRE 403, MRE 404(b), and MCL 768.27b.[6]

### III. REFERENCE TO "OTHER CHARGES"

Next, defendant contends that he was deprived of the due process right to a fair trial when Oakland County Sheriff's Department Sergeant Matthew Steele (Sgt. Steele)[7] testified that he obtained a buccal swab from defendant when he was jailed "on other charges," contrary to MRE 404(b). We disagree.

As noted, an evidentiary issue is preserved for appellate review when a party opposing the admission of evidence objects at trial and raises the same basis for objection claimed on appeal. *Thorpe*, 504 Mich at 252. If the error is constitutional or nonconstitutional and unpreserved, the defendant must demonstrate plain error that affected substantial rights. *Id*. Because the issue is unpreserved, it is reviewed for plain error affecting substantial rights that requires a defendant to show (1) an error occurred, (2) the error was plain because it was clear or obvious, and (3) the plain error affected substantial rights. *People v Allen*, 507 Mich 597, 613-614; 968 NW2d 532 (2021) (footnote omitted). If these three elements are established, the appellate court has the discretion to determine whether reversal is warranted. *Id*. But reversal is only warranted when the result is "the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. A clear or obvious error is one that cannot be reasonably disputed. *Id*. at 614 (footnote omitted). And, the requirement of plain error affecting substantial rights means a showing of prejudice such that the error affected the outcome of the trial. *Id*.

Although defendant contends that this issue is preserved by his objection, defendant exercised his right of self-representation when Sgt. Steele testified. When Sgt. Steele testified that he obtained the buccal swab when defendant was jailed on other charges, defendant objected on relevancy grounds, see MRE 401, and the trial court overruled the objection. On appeal, defendant contends that the testimony was inadmissible and contrary to MRE 404(b). Because this was not the objection raised in the trial court, this issue is unpreserved. *Thorpe*, 504 Mich at 252. Additionally, defendant's statement of the issue alleged that his due process right to a fair trial was violated, but such a constitutional challenge to the evidence was not raised in the trial court. This unpreserved due process challenge is also reviewed for plain error affecting substantial rights. *Id*.

In light of the record, we conclude that defendant failed to demonstrate plain error affecting substantial rights. Although Sgt. Steele offered that defendant was in jail on other charges on direct examination, during his cross-examination of Sgt. Steele, defendant elicited even more

---

[6] Although defendant faults the trial court for failing to conduct an analysis of the *Watkins* factors, there is no indication that defendant cited to or analyzed the *Watkins* factors in his response in opposition to the prosecutor's notice.

[7] Although defendant's statement of the question presented asserts that Oakland County Sheriff's Department Deputy Jason Marshall made reference to the other charges, defendant's argument recognizes, and review of the record confirms, that it was actually Sgt. Steele.

information regarding the circumstances of his arrest. It is apparent that defendant wanted Sgt. Steele to testify that his interview with defendant went well, that defendant gave a full and detailed statement, and that defendant's statement gave the "full story." Additionally, defendant sought to have Sgt. Steele testify regarding the contents of defendant's statement. But instead of asking pointed or leading questions on cross-examination that pertained solely to the contents of the interview, defendant asked broad questions then interjected during Sgt. Steele's answers.

Specifically, when defendant began questioning Sgt. Steele on cross-examination, defendant asked Sgt. Steele open-ended questions about whether Sgt. Steele ordered defendant to the Pontiac substation, whether Sgt. Steele asked deputies to bring defendant to the Pontiac substation, and lastly whether defendant was arrested. It is unclear why defendant inquired about the circumstances under which he was brought to the Pontiac substation and why such an inquiry was pertinent. As a result of these questions, Sgt. Steele answered, "I made contact with you by phone several times. You refused to come into the Pontiac substation. I obtained . . . a warrant for you and you also had another warrant. My direct patrol deputies were sent out to look for you. When they went to locate you, they made contact with you - - [.]" Although defendant attempted to stop the answer by objecting, the trial court noted that the witness was entitled to answer the broad questions posed by defendant. Because of the broad questioning, Sgt. Steele was able to testify about the arrest leading to an additional charge:

> So, due to you not coming in voluntarily my . . . patrol deputies went to look for you on your two existing warrants. When you saw them rather than talk to them you ran away from them. They had to use a Taser to take you into custody and you obtained another charge for resisting and obstructing the police. You were then subsequently brought to the Pontiac substation - -[.]

And, when defendant attempted to have Sgt. Steele testify that defendant gave the "full story," Sgt. Steele opined that defendant did not seem to be telling the truth.

On cross-examination, defendant could have avoided any admission of testimony addressing the circumstances of his arrival at the Pontiac substation and the existence of other warrants and charges by simply directing Sgt. Steele to questions about what transpired during the interview. Leading questions are acceptable on cross-examination. See *People v Dobek*, 274 Mich App 58, 68; 732 NW2d 546 (2007). And, although a defendant must be given an opportunity to conduct cross-examination, "the defendant has no constitutional right to a successful cross-examination." *People v Watson*, 245 Mich App 572, 584; 629 NW2d 411 (2001) (citation omitted). When a defendant interjected or raised an issue to explain his version of events, he "opened the door to a full and not just a selective development of that subject." *People v Allen*, 201 Mich App 98, 103; 505 NW2d 869 (1993) (quotation marks and citation omitted).

Defendant's interjection of the circumstances that brought him in for an interview opened the door to full, not selective development, surrounding the issue. *Allen*, 201 Mich App at 103. And, in exercising the right to self-representation, defendant was not entitled to a successful cross-examination. *Watson*, 245 Mich App at 584. Although Sgt. Steele may have volunteered the fact that defendant was in the jail "on other charges," defendant's persistent questioning on cross-examination not only divulged that other charges were pending but the circumstances of

defendant's arrest that included the addition of a charge of resisting and obstructing. This claim of error does not entitle defendant to appellate relief.[8]

Moreover, defendant failed to demonstrate how his extensive elicitation of evidence on cross-examination of the circumstances leading to his arrest and additional charges constituted a deprivation of due process and the right to a fair trial in light of Sgt. Steele's isolated mention of other charges during direct examination. A party cannot create an error in the trial court, then seek to correct it on appeal. *People v Szalma*, 487 Mich 708, 727; 790 NW2d 662 (2010). Stated otherwise, a party may not harbor error as an appellate parachute. See *id*. Defendant similarly failed to demonstrate plain error affecting substantial rights premised on a nonpreserved constitutional claim.

## IV. HEARSAY STATEMENTS BY RV TO THE NURSE EXAMINER

Defendant contends that the trial court erred by improperly admitting RV's hearsay statements to the nurse examiner, Julie Carroll, who performed sexual assault and strangulation assessments. Defendant asserts that those statements were not made for medical diagnosis and treatment, MRE 803(4), and that trial counsel was ineffective for failing to object. We disagree.

This issue is unpreserved because defendant did not object to the admission of Carroll's testimony, reports, and statements made by RV during the exam. This nonconstitutional unpreserved error is reviewed for plain error that affected substantial rights. *Thorpe*, 504 Mich at 252. "The reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 252-253.

Defendant failed to demonstrate entitlement to appellate relief. Review of Carroll's testimony shows that she delineated her qualifications and experience. When the prosecutor moved to admit Carroll as an expert in forensic nursing, defendant (when representing himself) had no objection. The prosecutor also admitted RV's sexual assault and strangulation exam records without objection by defendant. Carroll testified concerning RV's description of how the strangulation occurred, defendant's statements, and her injuries without objection by defendant.

And, review of defendant's cross-examination of Carroll indicates that his failure to object to Carroll's testimony was purposeful. Specifically, defendant asked if the injuries RV sustained were consistent with the story that RV told Carroll. ("Can you accurately and independently say that every last bruise was consistent with her story of sexual assault and strangulation?").

---

[8] On appeal, defendant contends that this improper statement about "other charges" was prejudicial because it caused the jury to speculate regarding the other charges. However, the trial court did not abuse its discretion by determining that the evidence of defendant's assault upon MS was admissible under MCL 768.27b. And, MS testified at trial regarding defendant's assault upon her, her flight from her vehicle, and her attempt to receive aid from a local business. The assault upon MS occurred on June 6, 2020, and the assault upon RV occurred on June 9-10, 2020. Although defendant contends that a reference to "other charges" was prejudicial and led to jury speculation that contention is belied by MS's trial testimony.

Defendant further alleged that Carroll's reports reflected RV's admission that the couple had sex, not that RV was sexually assaulted. In fact, defendant read portions of RV's statements to Carroll on the record and posed questions about penetration and injuries in light of RV's statements.

It is apparent from the cross-examination of Carroll regarding RV's statements during the forensic exams that the failure to object to Carroll's qualifications, reports, and any hearsay was purposeful. Defendant sought to inquire about the statements made by RV, any corroborating injuries, the plausibility of RV's version of events, and the contention that the failure to record a sexual assault in the strangulation exam reflected consensual sex. A defendant may not acquiesce to an issue or action taken by the trial court only to claim it as an issue on appeal. *People v Fetterley*, 229 Mich App 511, 520; 583 NW2d 199 (1988) (citation omitted). "To hold otherwise would allow [a] defendant to harbor error as an appellate parachute." *Id*. (citation omitted). Waiver is defined as "the intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citation omitted). To the contrary, forfeiture is a failure to timely assert a right. *Id*. "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id*. (quotation marks and citation omitted).

In the present case, defendant waived any claim of error pertaining to the admission of RV's hearsay statements to Carroll. Carroll's sexual assault and strangulation reports were admitted as exhibits. Defendant was given the opportunity to object, declined it, and referred to RV's hearsay statements when conducting cross-examination of Carroll. Defendant specifically approved of the admission of the reports containing RV's hearsay and elicited RV's statements when questioning Carroll, and this waiver of his rights extinguished any error. *Id*. at 219-220.[9]

Additionally, defendant cannot claim ineffective assistance of counsel in light of his choice to represent himself and question Carroll. A defendant's exercise of the right to represent himself comes with certain perils. *People v Kevorkian*, 248 Mich App 373, 419; 639 NW2d 291 (2001).

> The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law. Thus, whatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amount to a denial of effective assistance of counsel. [*Id*. (quotation marks and citation omitted).]

Because defendant represented himself at that point in trial and expressly failed to object to the admission of the reports containing alleged hearsay or Carroll's testimony addressing RV's hearsay, he cannot complain that he provided himself with ineffective assistance. *Id*. Moreover,

---

[9] Further, the admission of testimony that constitutes mere cumulative evidence is not prejudicial. *People v Rodriquez*, 216 Mich App 329, 332; 549 NW2d 359 (1996) (holding that the teachers' testimony about the prior statements of abuse by the complainant was merely cumulative evidence that was not prejudicial). As to Exhibit 75, the SANE's strangulation report, it comported with the information RV conveyed in her 911 call as well as her statement to Deputy Marshall.

he cannot fault standby counsel for his own trial strategy. This claim of error does not entitle defendant to appellate relief.

## V. JURY INSTRUCTIONS

Finally, defendant asserts that the trial court properly instructed the jury, but the organization of the instructions confused the jury, and trial counsel was ineffective for failing to object. We disagree.

Claims of instructional error are generally reviewed de novo. *People v Spaulding*, 332 Mich App 638, 652; 957 NW2d 843 (2020) (citation omitted). "[U]npreserved claims of instructional error are reviewed for plain error affecting substantial rights." *Id*. at 652 (citation omitted). A defense counsel's explicit approval of the jury instructions results in the waiver of any error. *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011).

Defendant failed to object to the instructions, and when asked for issues or objections, defense counsel assented to the instructions as read. Accordingly, this issue was waived. *Id*.

"Both the Michigan and the United States Constitutions require that a criminal defendant enjoy the assistance of counsel for his or her defense." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012) citing Const 1963, art 1, § 20; US Const, Am VI. "In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Id*. (citation omitted). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) (citation omitted).

Defendant failed to meet his burden of demonstrating ineffective assistance of counsel. He agreed that the jury instructions were correct but only took issue with the organization of the instructions with the trial court reading the lesser offense instructions first. However, the trial court also instructed the jury regarding the consideration of the offenses when deliberating. Counsel was not required to object to jury instructions that he deemed correct, a futile objection. Defendant is not entitled to appellate relief.[10]

---

[10] In the table of contents and in the statement of questions presented, defendant only raised four issues. But, at the conclusion of the analysis of those four issues in defendant's appellate brief, defendant raised a fifth issue, specifically challenging the trial court's compliance with *People v Anderson*, 398 Mich 361; 247 NW2d 857 (1976), and the court rules governing defendant's waiver of his right to counsel when invoking his right to self-representation. The failure to delineate the issue in the statement of questions presented is contrary to MCR 7.212(C)(5), that states the required contents of the appellant's brief. ("A statement of questions involved, stating concisely and without repetition the questions involved in the appeal. Each question must be expressed and numbered separately and be followed by the trial court's answer to it or the statement that the trial court failed to answer it and the appellant's answer to it."). When a defendant fails to properly

Affirmed.

/s/ Anica Letica
/s/ Christopher M. Murray
/s/ Sima G. Patel

---

present an issue by identifying it in the statement of questions presented, the issue is waived for appellate review. *People v Fonville*, 291 Mich App 363, 383; 804 NW2d 878 (2011). For purposes of completeness, we conclude that the trial court substantially complied with MCR 6.005(D); *People v Anderson*, 398 Mich at 367-368. By way of background, at a pretrial hearing on July 29, 2021, defendant's fourth court-appointed counsel informed the trial court that defendant wished to represent himself. After complying with *Anderson* and MCR 6.005(D), the trial court permitted defendant to represent himself. By mid-September 2021, however, defendant moved to end self-representation and fourth-court appointed counsel withdrew. Thereafter, at a pretrial hearing in August 2022, defendant sought to dismiss his appointed counsel. The trial court noted that defendant was currently represented by his seventh and eighth court-appointed attorneys, that appointment of new counsel would require adjournment of the upcoming trial date, and that the case had been pending for two years. Unable to obtain new counsel, defendant sought to represent himself. The trial court fulfilled the requirements to obtain a knowing, intelligent, and voluntary waiver, but questioned whether defendant's request was unequivocal because defendant seemingly wanted to communicate with his attorneys about the case. The trial court opted to revisit the issue at a pretrial scheduled for the following week and noted that defendant and counsel should confer in the interim. The following week, defendant reiterated his grievances with his counsel and the trial court's rulings. The trial court again engaged in questioning to satisfy *Anderson* and MCR 6.005(D). A clear colloquy of the requirements for a knowing, intelligent, and voluntary waiver was repeatedly interrupted by defendant's interjections and grievances. In his appellate brief, defendant challenges the trial court's determination that he knowingly, intelligently, and voluntarily waived his right to counsel during the August 10, 2022 pretrial. We conclude that the trial court substantially satisfied the requirements for a valid waiver. *People v Williams*, 470 Mich 634, 640; 683 NW2d 597 (2004). Furthermore, we note that, on the first day of trial, the court again fully advised defendant in compliance with *Anderson* and MCR 6.005(D), and defendant again rejected the assistance of counsel and opted to represent himself, before opting for representation by counsel on the third day of trial.

-12-